[No. D009318. Fourth Dist., Div. One. May 22, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT FREDERICK SLACK, Defendant and Appellant.

COUNSEL

Thomas J. Ulovec for Defendant and Appellant.

Edwin L. Miller, Jr., District Attorney, D. Michael Ebert and John Stuart Rice, Deputy District Attorneys, for Plaintiff and Respondent.

## OPINION

**WORK, J.**—After Robert Frederick Slack was convicted of driving under the influence of intoxicating beverages (Veh. Code, § 23152, subds. (a) and (b)) and admitted a previous conviction for the same charge, he successfully appealed to the Appellate Department of the San Diego Superior Court. That appellate body found the municipal court erred in determining Slack's offer of proof was insufficient to justify instructing the jurors on the defense of necessity. The appellate department certified the matter to this court to resolve what it perceived to be as a conflict between two published decisions of this division, *People* v. *Lemus* (1988) 203 Cal.App.3d 470 [249 Cal.Rptr. 897] and *People* v. *Patrick* (1981) 126 Cal.App.3d 952 [179 Cal.Rptr. 276]. Without further amplification, the order of certification states the appellate department relied on the holding in *People* v. *Lemus,* implying it would have reached a different result had it followed the holding in *People* v. *Patrick.* After certification, we asked the parties to brief the underlying issue of the correctness of the municipal court judgment and the appellate department's concern for decisional uniformity. The People and Slack agree there is no conflict between *Lemus* and *Patrick,* but differ on the underlying merits of the judgment. For the reasons set forth below, we find *Lemus* and *Patrick* approve the identical standard by which to evaluate whether a requested instruction relating to a theory of defense is supported by evidence sufficient to require it to be submitted to the jury, and affirm the municipal court's judgment of conviction.

I

Slack appealed to the appellate department on a settled statement solely on the trial court's refusal to instruct jurors on the defense of necessity. He does not dispute his intoxicated driving.

While we find the procedural aspect of this case unique in that neither party agrees with the appellate department's perception the two cited relevant authorities are in disagreement, the factual predicate submitted by Slack to support his defense of necessity is absolutely bizarre. In an offer of proof in camera, Slack stated he would testify he had been vacationing in Rosarito Beach and on September 24, 1985, he drove to Tijuana where he checked into a hotel. There he met a Mexican lawyer who accompanied him to dinner at a nearby restaurant. After eating (and apparently imbibing), Slack attempted to pay with a credit card issued in his mother's name which he was authorized to use. The waiter and "manager" of the restaurant challenged him because the credit card did not match his California identification card. Although Slack never saw anyone called to verify his authorization, the manager claimed the card was stolen. "After a lengthy

discussion, either the manager or the waiter asked [Slack] and his companion to step outside the restaurant to discuss the matter further." There, two large men joined the group and spoke briefly to the manager. The intoxicated Slack, fluent in Spanish, overheard one large man state, "We will take care of it." Slack interpreted the statement as a threat of physical harm. After the manager "indicated" he was going to call the police to settle the situation, Slack ran to his car and drove away, followed by the two large men in a separate car. But these men "disappeared" when Tijuana police "joined the chase." Slack then drove "all the way" to the United States border point of entry at high speed pursued by the police, lights and sirens activated. Slack has had numerous contacts with the Tijuana police and on one occasion was assaulted by a Tijuana policeman. "[Slack] believed that if he had stopped for the police he would have been assaulted." Slack acknowledged that at no time did the two large men get any closer than four to five feet from him, did not threaten him, make any threatening gestures, nor speak directly to him. Although Slack knew the Tijuana police were pursuing him he made no effort to pull over or submit. Further, during the entire confrontation at the restaurant he was intoxicated.

The trial court found the foregoing offer of proof legally insufficient to sustain an instruction on the defense of necessity. Slack then presented no defense evidence and was found guilty.

## II

Both the People and Slack cite the elements of a necessity defense as set forth in *People* v. *Pena* (1983) 149 Cal.App.3d Supp. 14, 25-26 [197 Cal.Rptr. 264, A.L.R.4th 1724]. ■ *Pena,* a drunk driving case, lists six elements which Slack must establish to justify an instruction in this context: (1) Slack must have driven while drunk to prevent a significant evil, (2) with no adequate alternative, (3) the harm flowing from intoxicated driving was not disproportionate to the harm avoided, (4) he had a good faith belief it was necessary to expose the public and property to the significant risk of harm inherent in a high speed chase of an intoxicated driver to prevent a greater harm, (5) his objective belief was reasonable under all the circumstances, and (6) he did not substantially contribute to creating the emergency.

■ The United States Supreme Court in *United States* v. *Bailey* (1980) 444 U.S. 394, 410 [62 L.Ed.2d 575, 591, 100 S.Ct. 624] stated: "Under any definition of these defenses one principle remains constant: if there was a reasonable, legal alternative to violating the law, 'a chance both to refuse to do the criminal act and also to avoid the threatened harm,' the defenses will fail." In *Pena,* the defendant contended he followed a deputy sheriff who

had removed his 20-year-old scantily-clad girlfriend from his car in the nighttime after finding the two sleeping at the side of the road, because the deputy's activities during a "weapons search" of the girl while closely examining her "see through" teddy pajamas, led him to fear she might be in danger. The court held, under the circumstances testified to by defendant and his girlfriend, the court erred in refusing to instruct the jury it could find the defendant not guilty if he established he had an objectively reasonable good faith belief the young girl might be in physical danger and drove the car to provide her protection or aid.

Although the order of certification to this court refers to the appellate department's concern for a need to resolve its perceived conflict between *Lemus* and *Patrick,* it does not tell us upon what its perception is based. Since neither the People nor Slack detect a conflict, we have filtered both decisions through our judicial strainer and find them decisionally congruent. However, there are certain factual differences which are irrelevant to the present issue. First, *Lemus* addressed the failure to instruct on self-defense while *Patrick,* like this case, concerned the doctrine of necessity. In *Patrick,* the factual predicate from which the trial court was required to determine whether there was proffered " ' "evidence from which a jury composed of reasonable [persons]" ' " would find the necessity defense applicable (*People* v. *Patrick, supra,* 126 Cal.App.3d at p. 960, fn. 5, citing *People* v. *Flannel* (1979) 25 Cal.3d 668, 684 [160 Cal.Rptr. 84, 603 P.2d 1], quoting *People* v. *Carr* (1972) 8 Cal.3d 287, 294 [104 Cal.Rptr. 705, 502 P.2d 513]), was produced by an offer of proof outside the jury's presence. In *Lemus,* this evidentiary base was established by trial testimony.

In *Patrick,* this court found the trial court correctly ruled a defendant's offer of proof, accepted as true, did not tend to show he personally had a good faith belief in the necessity of his action. Although the results in *Lemus* and *Patrick* differ, the relevant focus should be on the identity of the standard by which the sufficiency of the evidentiary foundation for the jury instruction was evaluated. *Patrick* recognized that doubts as to the sufficiency of the evidence to warrant an instruction should be resolved in the favor of the accused. (Citing *People* v. *Wilson* (1967) 66 Cal.2d 749, 763 [59 Cal.Rptr. 156, 427 P.2d 820].) However, this presupposes the evidence, if accepted in its totality by the trier of fact, could result in a finding defendant's criminal act was justified by necessity, i.e., that each *Pena* element would be satisfied. That is not the same as holding the court is required to instruct on necessity where the evidence proffered, even if fully accepted as true, does not satisfy all *Pena* elements. That was the case in *Patrick* where we were not concerned with whether the offer of proof was sufficient to have the jury believe the defendant's recitation of facts was

correct, but simply held even if the jury found them to be true, they would not establish the justification necessary for the defense of necessity.

In *Lemus,* the evidence was presented differently. There, the defendant testified at trial he stabbed the victim after the victim told him he was going to kill the defendant and reached in his pocket to do so. The trial court judge unilaterally determined the defendant's testimony was not credible because it deviated substantially from evidence produced by the prosecution. *Lemus* merely reiterated the long-standing rule that witness credibility is a matter to be determined by the trier of fact, and where that is a jury, that role is not to be usurped by the court. (Citing *People* v. *Flannel, supra,* 25 Cal.3d at p. 684.) Because had the jury found Lemus's version to be the correct one it could legally support a finding he acted in self-defense, it was error for the trial court to refuse his requested instruction on self-defense. Further, the *Lemus* majority stressed the Supreme Court in *Flannel* repudiated an interpretation of language in *People* v. *Carmen* (1951) 36 Cal.2d 768 [228 P.2d 281], upholding the right of a defendant to be entitled to an instruction based upon the hypothesis his testimony is entirely true no matter how incredible it may appear on its face. Although noting *Carmen* had been cited for that proposition, the court in *Flannel* made it clear that no instructions are required absent evidence substantial enough to merit consideration. (*People* v. *Flannel, supra,* 25 Cal.3d at pp. 684-685, fn. 12.)

 Comparing *Patrick* and *Lemus* leaves us with the unalterable conclusion there is no conflict between them on any issue relevant to this appeal. That Slack elected to satisfy his foundational burden through an offer of proof, rather than on the witness stand in his case in chief, is irrelevant. Presumably, this election prevented the jurors from hearing him admit he was intoxicated while driving, an admission extricably intertwined with the factual predicate he needed to lay to present a necessity defense. He undoubtedly surmised, correctly it turns out, after he finished testifying and exposing his guilt to the jurors the trial court would not give the necessity instruction. However, had he testified, the standard of review on appeal as to the correctness of the trial court's decision would have been exactly the same, that is whether there is evidence deserving of consideration from which reasonable jurors could conclude the *Pena* elements have been satisfied. (See *People* v. *Wickersham* (1982) 32 Cal.3d 307, 324 [185 Cal.Rptr. 436, 650 P.2d 311].) Although we recognize that accuracy of perception depends on the eyes of the beholder, we see no legal inconsistencies or conflicts between *Lemus* and *Patrick*.[1]

---

[1] Although it is unclear, the appellate department may have believed *Lemus*'s thrust was correctly characterized by its dissenting justice as giving an automatic right to criminal defendants to instructions based on theories unsupported by the evidence. (See *People* v. *Lemus, supra,* 203 Cal.App.3d at p. 484.) Our suspicion is somewhat based on the fact the dissenting

### III

At our request the parties briefed the issue of whether the trial court erred in refusing to instruct on the necessity defense. ■ For the following reasons, we conclude it did not err and the judgment of conviction should be affirmed.

Slack was detained by officials of the United States Customs for drunk driving upon reaching the border. His entry while driving intoxicated placed the persons at this normally congested checkpoint and the adjacent property in danger. A similar consideration was addressed in *People* v. *Morris* (1987) 191 Cal.App.3d Supp. 8, 11 [237 Cal.Rptr. 164], where the court considered the propriety of a necessity defense instruction to a charge of reckless driving. There, the court referred to the potential for human carnage and property damage from such vehicular abuse, a risk it found unacceptable in that case. Even assuming Slack would have testified he intended to drive only to the safety of the border and no further, an assertion significantly missing from his offer of proof, Slack has not shown a good faith belief that it was necessary for him to continue driving while intoxicated once he realized he was no longer being pursued by the participants in the restaurant exchange, but was being requested by the Tijuana police to pull over. Slack stated he believed if he had stopped for the police he would have been assaulted. He bases this belief on numerous (apparently previous) *contacts* with the Tijuana police and the fact that on one occasion he was assaulted by a Tijuana policeman. Whatever the contacts consisted of, with the exception of the occasion of the alleged assault, he does not characterize them as benign or otherwise. Thus, as expressed in the settled statement, this testimony has no evidentiary weight. Further, that he was assaulted by a Tijuana policeman on one occasion, the circumstances and gravity of which are not presented, gives no support for a jury finding that in this case, under these circumstances where Slack was admittedly driving drunkenly through the streets of Tijuana, he could have had a good faith belief it was necessary to do so because the threat of physical assault from law enforcement officials significantly outweighed the threat of public mayhem and property destruction to which he exposed those in his wake. We are satisfied, as the trial court must have been, that as a matter of law even if the jurors accepted Slack's entire offer of proof as true, it would not establish the elements of a necessity defense because the risk of vehicular destruction is so great that even the risk of physical assault to the intoxicated driver pales in comparison. Also, Slack does not show why he had no adequate reasonable alternative to driving drunk, nor that his own acts did not

opinion in *Lemus* was penned by the same judge who presided on the appellate department panel which decided and certified this case to us. The majority, however, held precisely to the contrary.

contribute to the "emergency" he perceived. His offer of proof contains no allegation he lacked sufficient cash to pay the bill or even that he asked the restaurant manager to verify his authorization to use the credit card. Nor does he suggest his professional dinner companion was not sufficiently affluent to "pick up the tab" or to temporarily loan Slack the money to pay the bill. Most significantly, except for his voluntary inebriation, the risk of harm from Slack's conduct would have been minimized.

As in *Patrick,* Slack's evidentiary predicate is insufficient as a matter of law to establish the elements of a necessity defense even if accepted as true by the trier of fact.

The judgment is affirmed.

Kremer, P. J., and Froehlich, J., concurred.