[No. A073484. First Dist., Div. Two. Aug. 15, 1997.]

THE PEOPLE, Plaintiff and Respondent, v.
SUDI PEBBLES TRIPPET, Defendant and Appellant.

## COUNSEL

Sudi Pebbles Trippet, in pro. per., for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Ronald E. Niver and Clifford K. Thompson, Deputy Attorneys General for Plaintiff and Respondent.

**OPINION**

**HAERLE, J.—**

## I. INTRODUCTION

Sudi Pebbles Trippet (appellant) was charged with transporting marijuana in violation of Health and Safety Code section 11360, subdivision (a),[1] and possession of more than 28.5 grams of marijuana in violation of section 11357, subdivision (c). A jury found her guilty on both counts on December 1, 1995. On appeal, appellant argues that her convictions should be reversed because (a) the trial court denied her the right to present the defense of medical necessity to the jury, (b) the convictions violate her right to freely exercise her religion, and (c) Proposition 215, enacted after her convictions, provides her with a defense to the prosecution.

We reject arguments (a) and (b) above, but remand the case to the trial court for a limited retrial addressed to the issue of whether and to what extent Proposition 215 provides appellant with a partial defense to either or both of the charges upon which she was convicted.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On October 17, 1994, Officer Patrick Sweeney of the Kensington Police Department stopped appellant in her car for lack of a license plate lamp light. Upon approaching the vehicle and requesting identification, Officer Sweeney noted a strong odor of marijuana coming from the vehicle. Officer Sweeney searched the car. He found two bags containing a green leafy substance which he suspected was marijuana. He also found hand-rolled cigarettes, which appeared to contain marijuana. Samples of the contents of the two bags and the cigarettes tested positive for marijuana. Officer Sweeney estimated the total weight of the marijuana recovered from appellant's vehicle at approximately two pounds. At trial, appellant testified that she knew the bags were in her vehicle and that they contained marijuana.

---

[1]Unless otherwise noted, all subsequent statutory citations are to the Health and Safety Code (Code).

Prior to trial, appellant moved for dismissal of the charges on several grounds including "religious necessity"[2] under the Religious Freedom Restoration Act of 1993 (RFRA). The court denied appellant's motion, finding that the statutes prohibiting the possession and transportation of marijuana were constitutional as applied to appellant.

The People moved *in limine* to exclude appellant's medical necessity defense. During an Evidence Code section 402 hearing, appellant presented a psychiatrist and "drug researcher," Dr. Tod Mikuriya, who testified regarding the medical use of marijuana for conditions such as migraine headaches (of which appellant allegedly suffered). The court found that appellant had not established the required elements of a necessity defense. Thus, the trial court excluded all evidence related to the defense of medical necessity.

On December 1, 1995, a jury found appellant guilty of both possession and transportation of marijuana as charged. The court admitted her to probation conditioned on her confinement in county jail for 180 days, less 51 days of credit. Appellant timely appealed her convictions.

Briefing was complete in this case on November 4, 1996. The very next day, Proposition 215 (the pertinent provisions of which will be noted in pt. III.C., *post*) appeared on the general election ballot and was passed, thereupon becoming section 11362.5 of the Code. Appellant made no mention of Proposition 215 in her briefing to this court; the Attorney General briefly noted it, but did not argue its relevance one way or the other.

At oral argument of this case in April 1997, and in response to questions from the court, appellant's counsel first contended that Proposition 215 did not change the law applicable to her fact situation, but later retreated from this position and conceded it might. After that argument, we delayed submission of the case and requested further briefing on several issues related to Proposition 215 (to be noted and discussed later). Thereafter, on June 26, 1997, appellant filed a petition for a writ of habeas corpus asking to be permitted, on the grounds of ineffective assistance of counsel, to take an entirely new appeal from the trial court's judgment. The disposition we make of the Proposition 215 issue in this case effectively moots that petition and we will, accordingly, deny it (*In re Trippet* (Aug. 18, 1997) A078942 [nonpub. opn.]).

---

[2]Although appellant uses this term to describe her defense based on her "religious purposes" use of marijuana, it is really more appropriately described as a "religious freedom" defense and we shall use that term hereafter.

## III. DISCUSSION

### A. *The Common Law Medical Necessity Defense Was Properly Excluded*

■ The trial court excluded appellant's common law medical necessity[3] evidence because it concluded she had not established the elements required for that defense. Appellant contends she presented sufficient evidence to invoke the defense and further contends she should have been permitted to present her defense to the jury because her psychiatrist's testimony at the Evidence Code section 402 hearing was uncontradicted. We reject both contentions.

#### 1. *Appellant failed to present evidence sufficient to establish the required elements of a necessity defense.*

■ A "necessity" defense is recognized in California case law; it has not been codified. The defense may be available where a defendant is charged with committing any criminal act except the taking of an innocent human life. (*People* v. *Pena* (1983) 149 Cal.App.3d Supp. 14, 22 [197 Cal.Rptr. 264] (*Pena*); *People* v. *Slack* (1989) 210 Cal.App.3d 937, 940-942 [258 Cal.Rptr. 702] (*Slack*).) The only California case that mentions a defense of *medical* necessity seems to assume the validity of the defense; there is no discussion. (*People* v. *Forster* (1994) 29 Cal.App.4th 1746, 1759 [35 Cal.Rptr.2d 705] ["[T]he jury did not accept Forster's defense of medical necessity, namely, that he drank only to deaden the pain of his ear injury."].) Assuming a medical necessity defense is valid in California (over and above, that is, any provided by Proposition 215), we agree with the trial court's implicit finding that it is composed of the same elements as the general necessity defense.

An individual claiming the defense of necessity must establish six required elements: "1. The act charged as criminal must have been done to prevent a significant evil; [¶] 2. There must have been no adequate alternative to the commission of the act; [¶] 3. The harm caused by the act must not be disproportionate to the harm avoided; [¶] 4. The accused must entertain a good-faith belief that his act was necessary to prevent the greater harm; [¶] 5. Such belief must be objectively reasonable under all the circumstances; and [¶] 6. The accused must not have substantially contributed to the creation of the emergency." (*Pena, supra,* 149 Cal.App.3d at pp. Supp. 25-26, fns. omitted; see also CALJIC No. 4.43 (6th ed. 1996).)

■ In the present case, the trial court found appellant's offer of proof on the common law medical necessity defense insufficient to permit the

---

[3]We shall refer to this proffered defense as the "common law medical necessity defense" to distinguish it from a defense based on Proposition 215, which we will discuss *post.*

evidence pertinent to it to go to the jury. ■■■ The standard for evaluating the sufficiency of the evidentiary foundation is whether a reasonable jury, accepting all the evidence as true, could find the defendant's actions justified by necessity. (*Slack, supra,* 210 Cal.App.3d at p. 941.) The court in *Slack* noted that satisfying the required foundational burden through an offer of proof rather than on the witness stand makes no difference to the standard of review on appeal, which is "whether there is evidence deserving of consideration from which reasonable jurors could conclude the *Pena* elements have been satisfied." (*Id.* at p. 942.)

■■■ To sustain such a defense, appellant was required to establish the following: (1) she possessed and transported marijuana to prevent a significant evil; (2) there was no adequate alternative; (3) the harm resulting from possessing and transporting marijuana was not greater than harm avoided; (4) she believed her actions were necessary to prevent greater harm; (5) her belief was objectively reasonable; and (6) she did not substantially contribute to the creation of the emergency. (See *Slack, supra,* 210 Cal.App.3d at p. 940.) We need not analyze all six elements because we find as a matter of law that appellant failed to establish that she had no adequate alternative but to possess and transport the marijuana.

In discussing the defenses of duress and necessity in the context of a prison escape, the United States Supreme Court stated: "Under any definition of these defenses one principle remains constant: if there was a reasonable, legal alternative to violating the law, 'a chance both to refuse to do the criminal act and also to avoid the threatened harm,' the defenses will fail. [Citation.]" (*United States* v. *Bailey* (1980) 444 U.S. 394, 410 [100 S.Ct. 624, 635, 62 L.Ed.2d 575] (*Bailey*).) The evidence below established that Dr. Mikuriya had prescribed Marinol, a prescription drug containing a synthetic marijuana compound, for appellant's (and other patients') migraine headaches. On cross examination, Dr. Mikuriya acknowledged that marijuana was a relatively unknown treatment, and that thousands of people in California suffering from migraines use "other forms of treatments, other . . . prescription drugs, over the counter drugs, to treat their migraine headaches." Marinol is legally available, having passed Food and Drug Administration scrutiny; its primary application is for nausea. According to Dr. Mikuriya's testimony, the federal drug enforcement administration has acknowledged that Marinol is "useful for any kind of condition that marijuana might be therapeutic for." Appellant cannot claim to have no reasonable alternative to smoking marijuana when a legal medication is available and known to both her and her doctor. (See *Bailey, supra,* 444 U.S. at p. 410 [100 S.Ct. at p. 635]; *People* v. *Patrick* (1981) 126 Cal.App.3d 952, 960 [179

Cal.Rptr. 276], citing LaFave & Scott, Criminal Law (1972) p. 387 ["The commission of a crime cannot be countenanced where there exists the possibility of some alternate means to alleviate the threatened greater harm."].)

A reasonable jury could not, therefore, find that appellant lacked adequate legal alternatives to marijuana. Although Dr. Mikuriya discussed the range of potential shortcomings of Marinol and various other drugs prescribed for migraine headaches, including lesser efficacy, potential side effects, and slower relief of symptoms, there was no evidence that Marinol is ineffective for appellant, causes side effects for her, or is in any way unavailable to her. Indeed, Dr. Mikuriya admitted that marijuana use can also have considerable adverse side effects. Appellant, acting in propria persona, argued to the trial court that she was aware of the potential side effects and lesser efficacy of Marinol. However, the only evidence in the record of Marinol's effects on appellant is Dr. Mikuriya's acknowledgment that Marinol "does afford [appellant] some relief." On this record, Marinol is a "reasonable, legal alternative to violating the law" by possessing and transporting marijuana (*Bailey, supra,* 444 U.S. at p. 410 [100 S.Ct. at p. 635]) and the common law medical necessity defense was therefore unavailable to appellant.

## 2. *Appellant's psychiatrist's testimony was properly excluded.*

The trial court properly excluded Dr. Mikuriya from testifying during the trial with respect to the common law medical necessity defense. A witness may testify at trial only as to relevant matters. (See Evid. Code, § 350.) At the Evidence Code section 402 hearing, Dr. Mikuriya's testimony was relevant only to whether appellant could establish a medical necessity defense. The court found appellant's offer of proof insufficient. The court stated, "I will not allow the doctor to testify as to any of the matters testified to this morning, because I have found that the medical necessity defense may not be raised in this case." That Dr. Mikuriya's testimony was uncontradicted at the Evidence Code section 402 hearing is irrelevant. The common law medical necessity defense was excluded because, even accepting all of his testimony as true, appellant failed to establish the required elements of that defense.[4]

---

[4]However, and as discussed below, on remand the trial court may well wish to consider whether Dr. Mikuriya's testimony is pertinent to the issue of whether appellant can establish a partial defense under Proposition 215 to either of her convictions.

## B. *Appellant's Free Exercise of Religion Rights Was Not Infringed*

 The trial court rejected appellant's religious freedom defense, finding that the statutes prohibiting the possession and transportation of marijuana are constitutional as applied to appellant. Appellant originally contended in this appeal (as she did below) that the RFRA (42 U.S.C. § 2000bb et seq.) required the prosecution to demonstrate a compelling state interest for enforcing statutes which substantially burdened her free exercise of religion, and that it failed to make such a showing. Whether or not the RFRA ever applied in this case, the United States Supreme Court has recently declared that statute unconstitutional. (*City of Boerne* v. *Flores* (1997) __ U.S. __ [117 S.Ct. 2157, 138 L.Ed.2d 624] (*Flores*).) There is, as an obvious consequence, nothing more that need be said regarding whether it requires —or required—a showing of a "compelling state interest" to enforce this state's drug laws as to appellant.

However, appellant also relies on pre-RFRA authority in contending that she established a religious freedom defense. For example, she cites *People* v. *Woody* (1964) 61 Cal.2d 716, 717 [40 Cal.Rptr. 69, 394 P.2d 813] (*Woody*) for the proposition that a compelling interest test should apply to evaluate the state's interest in prosecuting marijuana possession. The defendants in *Woody*, members of the Native American Church, were arrested during a religious ritual in which they were using peyote. (*Ibid.*) Our Supreme Court discussed extensively the centrality of peyote to their religion in finding that the statute prohibiting peyote "most seriously infringes upon the observance of the religion." (*Id.* at pp. 720-722.) The court then looked to whether the government had demonstrated a compelling state interest to justify application of the criminal statute to the defendants, and found that it had not. (*Id.* at pp. 722-727.) Appellant contends that this rule should apply here, and that no compelling state interest was shown in this case.

The short and simple answer to this contention is found in the United States Supreme Court's decision in *Employment Div., Ore. Dept. of Human Res.* v. *Smith* (1990) 494 U.S. 872 [110 S.Ct. 1595, 108 L.Ed.2d 876] (*Smith*) (the opinion which allegedly motivated the Congress to pass RFRA). This relatively recent decision made clear that a state may prohibit "religiously inspired" (*id.* at p. 874 [110 S.Ct. at p. 1597]) drug use without running afoul of the free exercise clause of the First Amendment. Drastically limiting the reach of its earlier opinion in *Sherbert* v. *Verner* (1963) 374 U.S. 398 [83 S.Ct. 1790, 10 L.Ed.2d 965] (the case our Supreme Court substantially relied upon in *Woody*), a six-to-three majority of the Supreme Court held that application of religion-neutral, general criminal drug laws "need not be

supported by a compelling state interest." (*People* v. *Peck* (1996) 52 Cal.App.4th 351, 358 [61 Cal.Rptr.2d 1].) Under *Smith,* therefore, a state may enact and enforce generalized criminal sanctions for marijuana possession and transportation without running afoul of the free exercise clause of the First Amendment. Indeed, holding exactly this, albeit pre-*Smith,* is our decision in *People* v. *Werber* (1971) 19 Cal.App.3d 598, 607-610 [97 Cal.Rptr. 150].

Via a supplemental brief submitted subsequent to the *Flores* decision, appellant also argues that, under *Frazee* v. *Illinois Employment Security Dept.*(1989) 489 U.S. 829, 830-834 [109 S.Ct. 1514, 1515-1518, 103 L.Ed.2d 914] (*Frazee*), she does not need to show that she was a member of a recognized religious group to assert the proffered defense, but only that her actions were "religiously-motivated."

There are two answers to this contention. First of all, the factual context of *Frazee* is about as remote as possible from the instant case. There, a unanimous court, in a six-page opinion, held that one did not have to be a member of a recognized religious organization or group to claim the benefit of the long-established rule that a state may not "constitutionally apply the eligibility provisions [of its unemployment-compensation program] so as to constrain a worker to abandon his religious convictions respecting the day of rest." (*Frazee, supra,* 489 U.S. at p. 832 [109 S.Ct. at p. 1516], quoting *Sherbert* v. *Verner, supra,* 374 U.S. at p. 410 [83 S.Ct. 1797].) That holding does not even come close to the issue involved in this case.

Second, appellant's evidence failed to meet the implicit standard of *Frazee* (and all other pertinent authority) that there must be a strongly held personal religious belief to trigger any sort of consideration of the free exercise clause. Indeed, here the trial court pointed out to appellant that she had not made any showing as to her own religious beliefs. It twice stated that she should present whatever she had in support of her motion, and that "now is the time." Despite these admonitions, appellant failed to present evidence of her religious beliefs or as to her religious use of marijuana. The only evidence she presented remotely relevant to this issue consisted of a lengthy policy argument describing the unfairness of prohibiting marijuana use for medical and religious reasons and then the conclusory statement, "I use it for spiritual and meditative needs."[5] Beyond this single sentence, she declined to provide any evidence of her religious beliefs or that her use of marijuana

---

[5]Appellant cites this single sentence as sufficient "evidence of her religious use of marijuana." At oral argument, her counsel conceded that this was the only item in the record upon which the religious freedom defense was based.

was central to her religious practice. More specifically, at no time did she assert, much less establish, that marijuana use is mandated or even substantially motivated by her religion—whatever that religion might be.

## C. *The Impact of Proposition 215*

As noted above, at the November 5, 1996, General Election, the voters approved Proposition 215, creating a new section 11362.5. That section, effective the day after the election,[6] provides as follows:

"(a) This section shall be known and may be cited as the Compassionate Use Act of 1996.

"(b)(1) The people of the State of California hereby find and declare that the purposes of the Compassionate Use Act of 1996 are as follows:

"(A) To ensure that seriously ill Californians have the right to obtain and use marijuana for medical purposes where that medical use is deemed appropriate and has been recommended by a physician who has determined that the person's health would benefit from the use of marijuana in the treatment of cancer, anorexia, AIDS, chronic pain, spasticity, glaucoma, arthritis, migraine, or any other illness for which marijuana provides relief.

"(B) To ensure that patients and their primary caregivers who obtain and use marijuana for medical purposes upon the recommendation of a physician are not subject to criminal prosecution or sanction.

"(C) To encourage the federal and state governments to implement a plan to provide for the safe and affordable distribution of marijuana to all patients in medical need of marijuana.

"(2) Nothing in this section shall be construed to supersede legislation prohibiting persons from engaging in conduct that endangers others, nor to condone the diversion of marijuana for nonmedical purposes.

"(c) Notwithstanding any other provision of law, no physician in this state shall be punished, or denied any right or privilege, for having recommended marijuana to a patient for medical purposes.

"(d) Section 11357, relating to the possession of marijuana, and Section 11358, relating to the cultivation of marijuana, shall not apply to a patient, or

---

[6](Cal. Const., art. II, § 10, subd. (a).)

to a patient's primary caregiver, who possesses or cultivates marijuana for the personal medical purposes of the patient upon the written or oral recommendation or approval of a physician.

"(e) For the purposes of this section, 'primary caregiver' means the individual designated by the person exempted under this section who has consistently assumed responsibility for the housing, health, or safety of that person."

As also noted earlier, the issue of whether this new provision of the Code might provide appellant with a whole or partial defense to the charges against her was the subject of discussion at oral argument and of this court's subsequent order for supplemental briefing. In that order, we asked the parties to brief, inter alia, these questions:

(1) Whether Proposition 215 may apply retroactively so as to afford appellant any defenses possibly available to her thereunder;

(2) If so, whether its provisions offer appellant a whole or partial defense to the offenses charged and which court (this court or the trial court on remand) should so decide.

For the reasons explained below, we answer these questions as follows:

(1) Proposition 215 may be retroactively applied to appellant's circumstances;

(2) The case should be remanded to the trial court to determine (with the guidance we hereafter provide) whether Proposition 215 provides appellant a partial defense to either or both of the charges against her. However, and for the reasons we discuss hereafter, on this record it cannot provide appellant with a complete defense to those charges.

### 1. The retroactivity of Proposition 215.

This is a relatively easy question. As the Attorney General concedes, absent contrary indicia, "the Legislature is presumed to have extended to defendants whose appeals are pending the benefits of intervening statutory amendments which decriminalize formerly illicit conduct [citation], or reduce the punishment for acts which remain unlawful. [Citations.] No different rule applies to an affirmative defense to the crime for which a defendant

was convicted, which defense was enacted during the pendency of her appeal." Proposition 215 contains no savings clause and so, as the Attorney General further concedes, "it may operate retrospectively to defend against criminal liability, in whole or part, for some who are appealing convictions for possessing, cultivating and using marijuana."

We agree with this assessment. The clearest precedent on point is *People v. Rossi* (1976) 18 Cal.3d 295, 299-302 [134 Cal.Rptr. 64, 555 P.2d 1313]. The defendant in that case had been convicted of violating the pre-1976 version of Penal Code section 288a by committing various sexual acts during the filming of what the court euphemistically termed "low-budget movies." (18 Cal.3d at p. 298.) After her conviction, and during the period that conviction was on appeal, the Legislature amended section 288a to decriminalize the acts performed by the defendant. The Supreme Court, relying heavily on its decade-earlier decision in *In re Estrada* (1965) 63 Cal.2d 740 [48 Cal.Rptr. 172, 408 P.2d 948], ruled that the amendment could be applied to preclude criminal sanctions for the defendant's acts. The precise holding in *Estrada* was that a superseding reduction in the punishment accorded a particular violation could be applied retroactively; the *Rossi* court, however, had no difficulty applying that principle to the slightly different facts before it. It held that ". . . the common law principles reiterated in *Estrada* apply a fortiorari when criminal sanctions have been completely repealed before a criminal conviction becomes final." (*People* v. *Rossi, supra,* 18 Cal.3d at p. 301; see also *People* v. *Babylon* (1985) 39 Cal.3d 719, 722 [216 Cal.Rptr. 123, 702 P.2d 205] [". . . absent a saving clause, a criminal defendant is entitled to the benefit of a change in the law during the pendency of his appeal . . . ."].)

This authority makes clear that Proposition 215 may be applied retroactively to provide, if its terms and the applicable facts permit, a defense to appellant. We now turn to that considerably more intricate issue.

2. *The applicability of Proposition 215 to appellant's conviction.*

We start with the language of the statute itself. Both by its clear terms and by the language of its proponents' arguments in the ballot pamphlet, it was plainly presented to California's voters as an act of compassion to those in severe pain. Its very title is the "Compassionate Use Act of 1996"; its opening "purpose" is declared to be to "ensure that *seriously ill* Californians have the right to obtain and use marijuana for medical purposes" under certain circumstances. (§ 11362.5, subd. (b)(1)(A), italics added.) In the same spirit, the opening sentence of the proponents' ballot pamphlet argument reads: "Proposition 215 will allow seriously and

terminally ill patients to legally use marijuana, if, and only if, they have the approval of a licensed physician." (Ballot Pamp., argument in favor of Prop. 215 as presented to voters, Gen. Elec. (Nov. 5, 1996) p. 60.) And in the rebuttal part of their argument, the proponents led off with a statement of San Francisco District Attorney Terence Hallinan, who declared: "I support [Proposition 215] because I don't want to send cancer patients to jail for using marijuana." (Ballot Pamp., rebuttal to argument against Prop. 215, Gen. Elec., *supra*, at p. 61.)

On the opposite side of the coin, both the statute's drafters and the proponents took pains to emphasize that, except as specifically provided in the proposed statute, neither relaxation much less evisceration of the state's marijuana laws was envisioned. Thus, subdivision (b)(2) of the section declares: "Nothing in this section shall be construed to supersede legislation prohibiting persons from engaging in conduct that endangers others, nor to condone the diversion of marijuana for nonmedical purposes." (§ 11362.5, subd. (b)(2).) And District Attorney Hallinan underlined this point by declaring, in the ballot pamphlet's rebuttal, that the proposition "only allows marijuana to be grown for a patient's personal use. Police officers can still arrest anyone who grows too much, or tries to sell it. [¶] . . . Police officers can still arrest anyone for marijuana offenses. Proposition 215 simply gives those arrested a defense in court, *if they can prove they used marijuana with a doctor's approval.*"[7] (Ballot Pamp., rebuttal to argument against Prop. 215, Gen. Elec., *supra*, at p. 61.) Finally, in his neutral analysis of the proposition presented to the voters via the Ballot Pamphlet, the Legislative Analyst stated that the proposed law "does not change other legal prohibitions on marijuana . . . ." (Ballot Pamp., analysis of Prop. 215 by Legislative Analyst as presented to voters, Gen. Elec., *supra*, at p. 59.)

We take seriously these consistent indicia of the intent of the drafters and proponents of Proposition 215. We accordingly have no hesitation in declining appellant's rather candid invitation to interpret the statute as a sort of "open sesame" regarding the possession, transportation and sale of marijuana in this state.[8] To hold as she effectively urges would be tantamount to suggesting that the proposition's drafters and proponents were cynically trying to "put one over" on the voters and that the latter were not perceptive enough to discern as much.

---

[7]"California decisions have long recognized the propriety of resorting to . . . election brochure arguments as an aid in construing legislative measures . . . adopted pursuant to a vote of the people." (*White* v. *Davis* (1975) 13 Cal.3d 757, 775, fn. 11 [120 Cal.Rptr. 94, 533 P.2d 222].)

[8]Appellant contends, for example, that "there are no quantity or potency limits [in the proposition] and virtually no restrictions as long as the 'purposes' are 'medical' . . . ," that the proposition changed the "medical use of marijuana from a crime to a 'right,' " and that "patients get the benefit of any doubt as to law or fact; and their 'right to obtain and use

Before consideration of the application of the 1996 law to the present record, it is appropriate to note two pertinent background items. First, upon her arrest, appellant was found to have approximately *two pounds* of both leaf marijuana and marijuana cigarettes in her possession.[9] Both sections 11357 and 11360 make a distinction between charges of illegal possession or transportation of marijuana by drawing a line at 28.5 grams[10]; those convicted of possessing/transporting more than that amount are punished more severely than those convicted of possessing/transporting "not more" than 28.5 grams. At the higher level, a defendant faces possible imprisonment; he or she does not at the "not more than 28.5 grams" level. Thus, appellant was in possession of and transporting over 30 times the quantity of marijuana the possession of which triggers the higher penalties.

Second, in the trial court, appellant was quite obviously attempting to independently validate two separate defenses to the charges, the medical necessity defense and the religious freedom defense; she obviously was unwilling to rest on one or the other alone. The clearest example of this is her November 9, 1995, statement to the trial court: "On some occasion [*sic*], I have medical purposes for using it. And on another occasion I have spiritual purposes for using it. And on other occasions I have both purposes."[11] We have already ruled that appellant's religious freedom defense fails. Thus if, at the time of her arrest, more than 28.5 grams of the marijuana she possessed and was transporting was solely for her "spiritual purposes," to that extent she rather clearly has no defense to the charges against her.

We next consider whether and to what extent the statute may provide appellant with a partial defense. The first and perhaps most critical issue is whether the present record is sufficient to permit us to rule, as a matter of law, that she can or cannot show that section 11362.5, subdivision (d) encompasses so much of her usage as was assertedly medical in nature. That subdivision provides, insofar as relevant here: "Section 11357, relating to the possession of marijuana . . . shall not apply to a patient . . . who

---

marijuana' gets 'Compassionate' protection," and that its transportation by any means and in any quantity desired is now also completely protected.

[9]In his supplemental brief, the Attorney General asserts that this amount is sufficient to allow the creation of "500 to 900 joints." We will have to take his word for it.

[10]In 1983, the Legislature amended the section to change the line from " 'one avoirdupois ounce' " to " '28.5 grams.' " (See Historical and Statutory Notes, 40 pt. 1 West's Ann. Health & Saf. Code (1991 ed.) foll. § 11357, p. 441.) The two standards are, of course, essentially the same, 1 ounce equaling 28.349 grams on the metric system.

[11]At the preliminary hearing, Officer Sweeney was cross-examined by appellant. He responded to one of her questions by testifying: "When I asked you how much you smoke a day, [you said] you smoke as much as you can, and you cook with it, and you do everything else that you can with the marijuana." To which appellant, *qua* cross-examiner, responded: "Right."

possesses . . . marijuana for the personal medical purposes of the patient upon the written or oral recommendation or approval of a physician."

The record already made in this case answers a part of this question: appellant cannot show that Dr. Mikuriya "recommended" marijuana to her; indeed, he flatly denied so doing in his Evidence Code section 402 hearing before the trial court.[12] But, of course, the statute uses the conjunctive; the defense it provides obtains if there is either a "recommendation or approval of a physician." We think it clear that these two terms mean something slightly different, and that "approval" connotes a less formal act than a "recommendation." We then ask if the record is clear as to whether or not any physician had "approved" appellant's use of marijuana. We conclude (as, effectively, does the Attorney General) that it is not. Dr. Mikuriya testified at the Evidence Code section 402 hearing that, but for "[t]he law," he would prescribe natural marijuana for appellant's migraine headaches. He further testified that, in his opinion, there was "no valid medical reason" why he was not allowed to prescribe marijuana, as opposed to other drugs, for migraine patients. He was never asked, point blank, if he "approved" of her use of it, but his testimony is arguably consistent with the conclusion that, at least to some extent, he did. He also noted that, although he had in fact prescribed Marinol for her, he doubted if he was appellant's "only doctor." Finally on this point, outside the presence of the jury, appellant told the trial court that she wished to testify that she believed she had "a valid verbal prescription" from Dr. Mikuriya inasmuch as he had told her verbally that he "recommends marijuana to me and he would oversee it if the law allowed him to do so." (The trial court declined to allow her to so testify for the reasons outlined in pt. III.A., *ante*.)

All of this leaves open two possibilities, either one of which might provide appellant with a partial defense to the section 11357, subdivision (c), possession charge: (a) Dr. Mikuriya "approved" of appellant's use of some or all of the marijuana in question at or about the time[13] appellant came into its possession or (b) some other physician approved (or possibly even "recommended") it.

Because the record is incomplete on this issue, we conclude we cannot rule on it and that a remand for a limited retrial is thus in order. Penal Code

[12]In this connection, we note that various federal agencies have taken the position that it may well be a violation of federal drug laws for a physician to recommend marijuana to a patient. (See *Conant* v. *McCaffrey* (N.D.Cal. Apr. 30, 1997) 61 Crim. L. Rptr. 1163-1164 [Dock. No. C 97-0139 FMS].)

[13]The Attorney General contends that any such "approval" must be antecedent to the possession. We do not agree; the statute does not so state or imply, nor do the dictionary definitions of "approval." Although prior approval will ordinarily be the case, having in mind the breadth of the term we can readily conceive of exigent circumstances in which the physician's approval might well be contemporaneous with the possession, or even subsequent to the possession although prior to actual usage.

section 1260 specifically permits us to, in appropriate circumstances, "remand the cause to the trial court for such further proceedings as may be just under the circumstances." (Pen. Code, § 1260; see also *People* v. *Vanbuskirk* (1976) 61 Cal.App.3d 395, 405-407 [132 Cal.Rptr. 30].)[14] At such a retrial, the trial court should permit the appellant to adduce any evidence she may wish to regarding whether any physician provided her "an oral or written recommendation or approval" for any portion of the marijuana of which she was in possession at the time of her arrest. Additionally, of course, the trial court would need to determine whether appellant possessed "more than 28.5 grams" of marijuana for non-medically "approved" needs, e.g., for her alleged "religious purposes" usage.[15]

However, we are not remotely suggesting that, even with a physician's "recommendation or approval," a patient may possess an unlimited quantity of marijuana. The ballot arguments of the proponents, some of which are quoted above, are simply inconsistent with the proposition that either the patient or the primary caregiver may accumulate indefinite quantities of the drug. The statute certainly does not mean, for example, that a person who claims an occasional problem with arthritis pain may stockpile 100 pounds of marijuana just in case it suddenly gets cold. The rule should be that the quantity possessed by the patient or the primary caregiver, and the form and manner in which it is possessed, should be reasonably related to the patient's current medical needs. What precisely are the "patient's current medical needs" must, of course, remain a factual question to be determined by the trier of fact. One (but not necessarily the only) type of evidence relevant to such a determination would be the recommending or approving physician's opinion regarding the frequency and amount of the dosage the patient needs. Such a rule can and should apply to appellant in a retrial.

There remains the issue of appellant's conviction for violating section 11360, subdivision (a), the provision making it a felony to transport more than 28.5 grams of marijuana. Appellant suggests that Proposition 215 impliedly and automatically provides a defense to this statute also. Indeed, she argues that juries must be instructed that "for patients who obtain and use marijuana legally under [section] 11362.5, *transporting it is a necessity*

---

[14]Additionally, and no matter what the result of the retrial, the trial court may wish to consider the impact of Proposition 215, as well as any additional evidence the parties may adduce pursuant to this opinion, in any sentencing decision.

[15]As discussed above, if appellant possessed more than 28.5 grams for her alleged "religious purposes" or for some other nonmedically approved use, to that extent she has no defense to the section 11357, subdivision (c), charge. If she possessed 28.5 grams or less for such nonapproved purposes, she may nevertheless be subject to lesser punishment under section 11357, subdivision (b), notwithstanding the possible validity of a Proposition 215 defense as to some of the marijuana she possessed.

*as a matter of law.*" We think this carries matters much too far. We note that the statute specifically identifies only two penal provisions (out of five) from article 2 of division 10 of the Code, section 11357, dealing with possession, and section 11358, dealing with cultivation, etc. It would have been a simple matter for the drafters to have included a reference to section 11360 within subdivision (d) of section 11362.5. Thus, that subdivision could just as easily have read: "Sections 11357, 11358 and 11360 shall not apply to a patient . . . who possesses, cultivates, or transports marijuana for the personal medical purposes of the patient"—but it doesn't. We may not infer exceptions to our criminal laws when legislation spells out the chosen exceptions with such precision and specificity. (See *People* v. *Municipal Court (Runyan)* (1978) 20 Cal.3d 523, 532 [143 Cal.Rptr. 609, 574 P.2d 425, 2 A.L.R.4th 681] [when the Legislature has provided criminal defendants with certain specific discovery tools, the court will "decline to exercise our inherent powers to achieve a different result which would conflict with its legislation" by permitting additional discovery procedures]; see, generally, 1 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) § 27; cf. *Sierra Club* v. *State Bd. of Forestry* (1994) 7 Cal.4th 1215, 1230 [32 Cal.Rptr.2d 19, 876 P.2d 505] ["Under the maxim of statutory construction, *expressio unius est exclusio alterius,* if exemptions are specified in a statute, we may not imply additional exemptions unless there is a clear legislative intent to the contrary."].) Not only is there no evidence of any "contrary" intent here, indeed the voters were expressly told by the Legislative Analyst that the proposed law "does not change other legal prohibitions on marijuana . . . ." (Ballot Pamp., analysis of Prop. 215 by Legislative Analyst as presented to voters, Gen. Elec., *supra,* at p. 59.) This symmetry between legal principle and evidence of the voters' intent compels the conclusion that, as a general matter, Proposition 215 does not exempt the transportation of marijuana allegedly used or to be used for medical purposes from prosecution under section 11360.

However, and as even the Attorney General concedes, practical realities dictate that there be *some* leeway in applying section 11360 in cases where a Proposition 215 defense is asserted to companion charges. The results might otherwise be absurd. For example, the voters could not have intended that a dying cancer patient's "primary caregiver" could be subject to criminal sanctions for carrying otherwise legally cultivated and possessed marijuana down a hallway to the patient's room. Our holding does not, therefore, mean that *all* transportation of marijuana is without any defense under the new law. But so stating is a far cry from agreeing that transportation of two pounds of marijuana in a car by one who claims to suffer from migraine headaches is, even assuming the necessary medical approval, ipso facto permissible, as appellant would have it. The test should be whether the

quantity transported and the method, timing and distance of the transportation are reasonably related to the patient's current medical needs. If so, we conclude there should and can be an implied defense to a section 11360 charge; otherwise, there is not. Because there is a possibility (albeit remote) that appellant can establish that the two pounds of marijuana she was admittedly transporting at the time of her arrest (or at least all of it above 28.5 grams)[16] met this test, the trial court should also determine this issue on remand.

## IV. Disposition

Appellant's convictions are vacated and, pursuant to Penal Code section 1260, the cause remanded to the trial court for further proceedings consistent with this opinion. To summarize our various holdings above, those proceedings would include the following factual determinations: as to the section 11357, subdivision (c), conviction: (1) whether Dr. Mikuriya "approved" or some other physician "recommended or approved" appellant's use of some or all of the marijuana of which she was in possession at the time of her arrest; (2) if so, whether and to what extent the quantity of marijuana which she then possessed was reasonably related to her then-current medical needs; and (3) what quantity of marijuana of which she was then in possession was related to her "religious purposes" usage (see fn. 15, *ante*). With respect to the section 11360, subdivision (a), conviction, the trier of fact will need to determine: (1) whether any (and if so what amount) of the marijuana appellant was transporting at the time of her arrest was, considering not only the quantity, but the method, timing and distance of the transportation, reasonably related to her then current medical needs; and (2) what quantity of the marijuana she was transporting was related to her "religious purposes" usage.[17]

The trial court will then need to consider whether any of the additional proof adduced by the parties justifies instructions on lesser included offenses (i.e., sections 11357, subdivision (b), and 11360, subdivision (b)) and whether, if the retrial results in a conviction, any of that evidence impacts on the sentence the court determines to impose.

Kline, P. J., and Lambden, J., concurred.

Petitions for a rehearing were denied September 5, 1997, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied November 25, 1997.

---

[16]See footnote 15, *ante*. The same analysis applies regarding the transportation charge under section 11360.

[17]Because the statute provides a limited affirmative defense, the burden is, of course, on the defendant to raise the defense and prove its elements. (See *People* v. *Cardenas* (1997) 53 Cal.App.4th 240, 244-246 [61 Cal.Rptr.2d 583], and cases cited therein.)