[No. G042582. Fourth Dist., Div. Three. Oct. 15, 2010.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT VICTOR WAYMAN, Defendant and Appellant.

COUNSEL

Richard Schwartzberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Heather Crawford and Christine Levingston Bergman, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**BEDSWORTH, Acting P. J.**—Robert Victor Wayman was convicted of transporting marijuana that was found in his car during a traffic stop. At trial, he presented evidence he was qualified to use marijuana for medicinal purposes and asserted a defense under the Compassionate Use Act of 1996 (CUA).[1] In instructing on this defense, the trial court told the jury Wayman must be a qualified user under the CUA, and the circumstances of his transportation had to demonstrate he was transporting the marijuana for his own medical use. On the latter point, they were instructed the quantity transported and the method, timing, and distance of the transportation had to be reasonably related to Wayman's current medical needs. Wayman contends it was error to instruct the jury in this fashion. He asserts the error was prejudicial because, while he showed he was qualified to use marijuana for his own personal medical use, his transportation of the drug in this case was not related to such use. We find the jury was properly instructed on the law respecting the transportation of medical marijuana and affirm the judgment in all respects.

FACTS

In the early morning hours of March 8, 2008, California Highway Patrol Officer Juan Ulloa stopped Wayman for speeding, and arrested him for being under the influence of alcohol. He then searched the car and found a baggie containing one gram of marijuana by the driver's door and $120 in the glove compartment. In the trunk of the car, he found a backpack containing 26 baggies of marijuana labeled 3.5 grams each; five baggies of marijuana labeled five grams each; 14 small bottles of concentrated cannabis; 15 brown paper lunch bags; 14 small metal screens; five Ziploc bags; and an electronic scale.[2] Wayman also had $117 and a medical marijuana card in his wallet. Attached to the card was a physician's certificate authorizing his use of marijuana for medical purposes.

Wayman was charged with transporting marijuana (§ 11360), possessing marijuana for sale (§ 11359), possessing concentrated cannabis (§ 11357) and the misdemeanor offenses of driving under the influence of alcohol and

---

[1] The CUA is set forth in section 11362.5 of the Health and Safety Code. Unless noted otherwise, all further statutory references are to this code.

[2] Ulloa testified he weighed some of the baggies found in Wayman's backpack and discovered their labels were "true to weight." Based on this testimony, we surmise the total amount of marijuana in Wayman's possession was approximately 117 grams, or about four ounces.

driving with a blood-alcohol content level of 0.08 percent or more (Veh. Code, §§ 23152, subds. (a), (b)). During his trial, narcotics investigator Brent Benson opined that, based on the items found in Wayman's vehicle, he possessed the marijuana for the purpose of sale or distribution. Wayman, however, presented evidence the marijuana was for his own personal medical use.

Specifically, Wayman testified he suffers from back pain, and when other medical treatments proved ineffective, he turned to Dr. Elaine James for help. Dr. James recommended marijuana for Wayman's condition and authorized him to use the drug for medicinal purposes. Wayman testified his marijuana consumption varies with the extent of his back pain, but he seldom goes more than a couple of days without using the drug. He also said his preferred method of use is to cook it up with other foods and eat it with his meals.

Regarding the marijuana found in his car, he said he received it from a dispensary in Northern California a few days before his arrest and paid about $2,000 for it. He said he kept it in his car to appease his mother, with whom he lived, explaining, "I don't want to bring anything in [her house] that she doesn't want to be in there [such as marijuana]. So I tried to be very [discreet] about it. I put it in the backpack in . . . my car. That's why I had the cannabis in my car."

Wayman said that when he was pulled over by the police, he was on his way to his girlfriend's house. He had been drinking with his buddies earlier in the evening, but they did not use any drugs. Wayman admitted he had aspirations to start a medical marijuana delivery service someday, and had even gone as far as acquiring some Web sites to advertise his services in that regard. However, he insisted he did not intend to sell the marijuana he had in his car and did not possess it for any commercial purpose. He said it was solely for his own personal medical use.

The jury convicted Wayman of transporting marijuana and the two misdemeanor charges. It found him not guilty of possessing concentrated cannabis and deadlocked on the possession for sale charge, which was ultimately dismissed. The court placed him on probation and ordered him to spend 180 days in jail, with credit for time served.

## DISCUSSION

Wayman claims the trial court misinstructed the jury regarding the circumstances under which a person may lawfully transport medical marijuana under California law. We disagree.[3]

As to the charge of transporting marijuana, the court instructed the jury per CALCRIM No. 2361 that the transportation of marijuana is not unlawful if authorized by the CUA and that the CUA allows a person to transport marijuana for personal medical purposes when a physician has recommended or approved such use. The court also instructed that the amount of marijuana transported must be "reasonably related to the patient's current medical needs. In deciding if marijuana was transported for medical purposes, also consider whether the method, timing, and distance of the transportation were reasonably related to the patient's current medical needs."

Consistent with this instruction, the prosecutor argued to the jury that "just because someone may be entitled to legally possess marijuana, does not necessarily mean they're entitled to legally transport it." The prosecutor maintained the CUA did not provide a defense to the transportation charge in this case because Wayman was not transporting the marijuana in his car for medical purposes at the time he was pulled over; rather, he was just storing it in his vehicle for use sometime in the future.

Wayman contends the court erred by conditioning his right to transport marijuana on the requirement that his *transportation* of the drug be reasonably related to his current medical needs. In his view, the law permits qualified patients such as himself to transport medical marijuana "without qualification," as long as the marijuana is for their own personal medical use. In other words, the circumstances surrounding the transportation need not demonstrate that the marijuana was being transported for the patient's medical needs. We reject this interpretation as an overly expansive reading of the governing law in this area.

When voted into law by the California electorate in 1996, the CUA did not make any provision for the transportation of marijuana. The law was designed to ensure that seriously ill Californians have the right to obtain and use marijuana for medicinal purposes without threat of criminal prosecution.

---

[3] The Attorney General argues Wayman waived any instructional error that may have occurred because he did not object to the subject instruction below. However, because Wayman contends the instruction unfairly restricted his right to present his defense, his failure to object is no bar to our review of the instruction. (Pen. Code, § 1259 [allowing appellate review of any instruction which affected the substantial rights of the defendant without regard to whether a formal objection was registered in the trial court].)

(§ 11362.5, subd. (b)(1)(A), (B).) But the measure was limited to two specific offenses, possession and cultivation of marijuana. Specifically, it provides, "Section 11357, relating to the possession of marijuana, and Section 11358, relating to the cultivation of marijuana, shall not apply to a patient, or to a patient's primary caregiver, who possesses or cultivates marijuana for the personal medical purposes of the patient upon the written or oral recommendation or approval of a physician." (§ 11362.5, subd. (d).)

In the wake of the CUA, the question arose as to whether the right to grow, possess and use medical marijuana necessarily included the right to transport the drug. In *People v. Young* (2001) 92 Cal.App.4th 229 [111 Cal.Rptr.2d 726] (*Young*), the court answered that question in the negative. It reasoned the act "on its face exempts only possession and cultivation from criminal sanctions for qualifying patients. [Citation.] It does not exempt transportation as defined in section 11360. ' "Absent ambiguity, we presume that the voters intend the meaning apparent on the face of an initiative measure [citation] and the court may not add to the statute or rewrite it to conform to an assumed intent that is not apparent in its language." ' [Citation.]" (*Young, supra*, 92 Cal.App.4th at p. 237.)

A different conclusion was reached by the court in *People v. Trippet* (1997) 56 Cal.App.4th 1532 [66 Cal.Rptr.2d 559] (*Trippet*). In that case, the defendant was charged with transporting marijuana and possessing more than 28.5 grams of the drug. The court recognized that, by its terms, the CUA applies only when the defendant is charged with possessing or cultivating marijuana. However, the court determined, and the Attorney General agreed, that "practical realities dictate that there be *some* leeway in applying section 11360 in cases where a [CUA] defense is asserted to companion charges. The results might otherwise be absurd. For example, the voters could not have intended that a dying cancer patient's 'primary caregiver' could be subject to criminal sanction for carrying otherwise legally cultivated and possessed marijuana down a hallway to the patient's room." (*Trippet, supra*, 56 Cal.App.4th at p. 1550.)

With that in mind, the *Trippet* court established a fact-specific test for determining when the transportation of medical marijuana is lawful. The court ruled, "The test should be whether the quantity transported and the method, timing and distance of the transportation are reasonably related to the patient's current medical needs. If so, we conclude there should and can be an implied defense to a section 11360 charge; otherwise, there is not." (*Trippet, supra*, 56 Cal.App.4th at pp. 1550–1551.) Although the defendant in

*Trippet* was traveling with two pounds of marijuana in her car when she was stopped, and there was only a "remote" chance she could meet this test, the court remanded the case to allow her the opportunity to do so before the trier of fact. (*Id.* at p. 1551.)

Faced with a split of authority as to whether the CUA provides a defense to the charge of transporting marijuana, the California Supreme Court took up the issue in *People v. Wright* (2006) 40 Cal.4th 81 [51 Cal.Rptr.3d 80, 146 P.3d 531] (*Wright*). However, in 2003, while that case was pending before the court, "the Legislature enacted the Medical Marijuana Program (MMP), one purpose of which was to address issues not included in the CUA so as to promote the fair and orderly implementation of the CUA. (§ 11362.7 et seq.) Among its provisions, the MMP specifically provides an affirmative defense to the crime of transporting marijuana by individuals entitled to the protections of the CUA. (§ 11362.765.)" (*Wright, supra*, 40 Cal.4th at p. 85.) Because of that, *Wright* found it "unnecessary to resolve the split of authority between *Trippet* and *Young*," noting that the "enactment of the MMP has rendered moot the conflict between these decisions as to whether the CUA provides a defense to a charge of transportation of marijuana." (*Id.* at p. 92.)

In a footnote to this statement, the *Wright* court added, "As both sides acknowledged at argument, however, *Trippet*'s test for whether the defense applies in a particular case survived the enactment of the MMP and remains a useful analytic tool to the extent it is consistent with the statute." (*Wright, supra*, 40 Cal.4th at p. 92, fn. 7.) Wayman argues *Trippet*'s test is actually more restrictive than the MMP (Medical Marijuana Program) and is thus inconsistent with the statute. In fact, he goes so far as to say that the MMP was designed to effectively repeal the *Trippet* test. We do not believe that to be the case; we think the Supreme Court's footnote is correct.

"Although the MMP did not literally amend the statute that established the CUA (that is, § 11362.5), the MMP did add 18 new code sections that address the general subject matter covered by the CUA. At the heart of the MMP is a voluntary 'identification card' scheme that, unlike the CUA—which, as noted, provides only an affirmative defense to a charge of possession or cultivation—provides protection against arrest for those and related crimes. Under the MMP, a person who suffers from a 'serious medical condition,' and the designated 'primary caregiver' of that person, may register and receive an annually renewable identification card that, in turn, can be shown to a law enforcement officer who otherwise might arrest the program participant or his

or her primary caregiver. Section 11362.71, subdivision (e) of the MMP provides in full: 'No person or designated primary caregiver in possession of a valid identification card shall be subject to arrest for possession, transportation, delivery, or cultivation of medical marijuana in an amount established pursuant to this article [that is, the 18 new sections comprising the MMP], unless there is reasonable cause to believe that the information contained in the card is false or falsified, the card has been obtained by means of fraud, or the person is otherwise in violation of the provisions of the article.' " (*People v. Kelly* (2010) 47 Cal.4th 1008, 1014–1015 [103 Cal.Rptr.3d 733, 222 P.3d 186], fns. & italics omitted.)[4]

■ Beyond that, section 11362.765 provides immunity from criminal liability for the transportation of marijuana. It provides, "Subject to the requirements of this article, the individuals specified in subdivision (b) shall not be subject, on that sole basis, to criminal liability under" section 11360 pertaining to the transportation of marijuana. (§ 11362.765, subd. (a).) Those individuals include any qualified patient or person with an identification card "who transports or processes marijuana for his or her own personal medical use." (§ 11362.765, subd. (b)(1).)

Wayman argues, "Unlike *Trippet* the MMP exempted from prosecution transportation of marijuana with but one qualification, that the marijuana transported be for personal use by a CUA eligible patient." But that is not correct. The statute does not focus on whether the subject *marijuana* was for the patient's medical use. Instead, it focuses on whether the *transportation* of the marijuana was for the patient's medical use. By its terms, it provides immunity from criminal liability only when a qualified patient "transports . . . marijuana *for his or her own personal medical use*." (§ 11362.765, subd. (b)(1), italics added.)

Wayman's interpretation of the subject provision would be at odds with a primary objective of the MMP and CUA, which is to delimit and control the circumstances under which medical marijuana may be used. (See §§ 11362.5, subd. (b)(2) [CUA should not be construed to supersede other legislation or condone the use of marijuana for nonmedical purposes], 11362.79 [clarifying that MMP does not authorize the use of medical marijuana where smoking is

---

[4] In *Kelly*, the Supreme Court determined the MMP constituted an invalid amendment to the CUA to the extent it established limitations on the amount of marijuana a qualified patient may possess. (*People v. Kelly, supra*, 47 Cal.4th at pp. 1024–1049.) Those limitations were not materially at issue in this case because the amount of marijuana Wayman possessed was within the statutory guidelines.

otherwise prohibited].) Allowing qualified patients to transport their medical marijuana without regard to whether the transportation is reasonably related to their medical needs would inevitably result in more marijuana being transported on the roadways and via every other mode of travel. We find it difficult to believe the electorate or the Legislature intended such a proliferation of marijuana in the public domain absent a connection between the transportation and the personal medical use of the drug.

It is one thing to give medical marijuana users the right to transport marijuana from the place they obtain it to the place they intend to use it. (See, e.g., *Wright, supra*, 40 Cal.4th at p. 96 [determining there was sufficient evidence to justify a CUA defense to the charge of transporting marijuana where the defendant "had purchased the marijuana found in his car on the morning of his arrest for his own personal medical use and was in the process of transporting the marijuana to his home when he was arrested."].) But it is quite another to say that qualified users have an unfettered right to take their marijuana with them wherever they go, regardless of their current medical needs. The medical marijuana laws were never intended to be "a sort of 'open sesame' regarding the possession, transportation and sale of marijuana in this state." (*Trippet, supra*, 56 Cal.App.4th at p. 1546, fn. omitted.) Rather, they were designed "[t]o ensure that seriously ill Californians have the right to obtain and use marijuana *for medical purposes*." (§ 11362.5, subd. (b)(1)(A), italics added.) Consistent with this objective, and in light of the wording of the MMP, we conclude the Legislature intended to limit the circumstances under which the transportation of medical marijuana is lawful to situations in which the transportation is reasonably related to the patient's medical needs. Had Wayman been leaving town for an extended vacation, his possession of four ounces of marijuana might fall within the protection of the CUA and MMP. But nothing in the law allows a user to store his entire marijuana supply in his car and transport it wherever he goes, just to appease his mother.

The factors discussed in *Trippet*, i.e., the amount of marijuana involved, as well as the method, timing and distance of the transportation, logically pertain to the central question of whether the transportation at issue was for the patient's own personal medical use. Therefore, the *Trippet* test is consistent with the MMP, and the trial court did not err in instructing on it in this case. Because the court's instruction properly conveyed the law respecting the transportation of marijuana, we uphold Wayman's conviction for that offense.

## DISPOSITION

The judgment is affirmed.

Fybel, J., and Ikola, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 19, 2011, S187519. Kennard, J., and Werdegar, J., were of the opinion that the petition should be granted.