Filed 4/13/22

**CERTIFIED FOR PUBLICATION**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B308433 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA066185) |
| v. | |
| RONALD REYES CANEDOS, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Shannon Knight, Judge.  Reversed and remanded with directions.

Randall Conner, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Steven E. Mercer, Deputy Attorneys General, for Plaintiff and Respondent.

———————————————

In 2020, the Legislature enacted Assembly Bill No. 1950 (Stats. 2020, ch. 328) (Assembly Bill No. 1950), which reduced the maximum duration of probation in most felony cases to two years, and in misdemeanor cases to one year. Under principles first established in *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*), courts have held unanimously that the law applies retroactively to the benefit of defendants serving probation terms in excess of the maximum under the new law. (*People v. Quinn* (2021) 59 Cal.App.5th 874, 879−884 (*Quinn*); *People v. Sims* (2021) 59 Cal.App.5th 943, 955−964 (*Sims*); *People v. Lord* (2021) 64 Cal.App.5th 241, 244−246 (*Lord*); *People v. Stewart* (2021) 62 Cal.App.5th 1065, 1070−1074 (*Stewart*), review granted June 30, 2021, S268787.)

This case requires us to determine how far the retroactive application of Assembly Bill No. 1950 extends. Defendant and appellant Ronald Reyes Canedos, unlike the defendants in the cases cited above, had violated the terms of his probation before Assembly Bill No. 1950 became effective on January 1, 2021. Canedos contends that the statute nevertheless applies retroactively to him. He argues that because he violated probation more than two years after the court imposed probation, we must reverse the sentence of 32 months in prison that the trial court imposed following the violation.

We agree, as we see no principled basis for denying retroactive relief to defendants in Canedos's position. Although Canedos had violated the terms of his probation before Assembly Bill No. 1950 became effective, neither the trial court's finding of a violation nor his original conviction was yet final for purposes of retroactivity under *Estrada*. (See *People v. Esquivel* (2021) 11 Cal.5th 671, 678 (*Esquivel*); see also *People v. McKenzie* (2020)

9 Cal.5th 40, 47–48.)  Unless the Legislature specifies otherwise, it is a matter of "presumed legislative intent" that an ameliorative criminal statute applies retroactively to all defendants whose convictions were not yet final when the law became effective.  (*Esquivel*, *supra*, 11 Cal.5th at p. 680.)  We see no indication in the text or legislative history of Assembly Bill No. 1950 that the Legislature meant to limit its retroactive application.  Under the new law, Canedos's probation expired in 2018, more than a year before he committed the violation.  Thus, the court no longer had the authority to revoke Canedos's probation and sentence him to prison.  (See *People v. Butler* (2022) 75 Cal.App.5th 216, 220–221 (*Butler*), petn. for review pending, petn. filed Mar. 25, 2022, S273773.)

**FACTUAL AND PROCEDURAL SUMMARY**

On January 12, 2016, Canedos pleaded guilty to two counts of possession of a firearm by a felon (Pen. Code,[1] § 29800, subd. (a)(1)), one count of possession of body armor by a violent felon (§ 31360, subd. (a)), and one count of possession of ammunition by a felon (§ 30305, subd. (a)(1)).  The trial court sentenced him to four years in prison and suspended execution of the sentence pending the completion of four years of probation.

More than three years later, on December 17, 2019, Canedos became involved in an argument with his wife, O.S.  According to statements from family members, Canedos pulled a knife on O.S., moved it back and forth in front of her face, and threatened to kill O.S. and her mother.  Three days later, on December 20, Canedos pleaded not guilty to several charges related to the incident, including assault with a deadly weapon

---

[1] Subsequent statutory references are to the Penal Code.

3

(§ 245, subd. (a)(1)), and the trial court summarily revoked his probation.

At a trial on the new charges, a jury convicted Canedos in September 2020 of assault with a deadly weapon, and the court found him in violation of his probation term requiring him to obey all laws. The court imposed an aggregate sentence of 6 years 8 months in prison. The sentence consisted of the upper term of four years for assault with a deadly weapon, plus consecutive terms of eight months—one third the middle term—for each of the four 2016 counts. In a prior opinion, we affirmed the conviction of assault with a deadly weapon. (See *People v. Canedos* (Oct. 21, 2021, B307948) [nonpub. opn.].)

## DISCUSSION

### A.    *Retroactivity of Assembly Bill No. 1950*

In September 2020, the Legislature enacted Assembly Bill No. 1950, which reduced the maximum duration of probation in cases in which the court suspends the execution of a sentence pending the successful completion of probation. Previously, section 1203.1, subdivision (a) allowed courts to impose up to five years of probation in cases where the suspended sentence was five years or less. Under the new law, which became effective January 1, 2021, the maximum period of probation is two years.

"Generally, a statute applies prospectively unless otherwise stated in the language of the statute, or when retroactive application is clearly indicated by legislative intent." (*People v. Winn* (2020) 44 Cal.App.5th 859, 872.) Beginning with its opinion in *Estrada*, however, our Supreme Court has recognized an exception to this rule in ameliorative criminal statutes. The

4

court explained that "[w]hen the Legislature amends a statute so as to lessen the punishment it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act. It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply. The amendatory act imposing the lighter punishment can be applied constitutionally to acts committed before its passage provided the judgment convicting the defendant of the act is not final. This intent seems obvious, because to hold otherwise would be to conclude that the Legislature was motivated by a desire for vengeance, a conclusion not permitted in view of modern theories of penology." (*Estrada*, *supra*, 63 Cal.2d at p. 745.)

In *People v. Francis* (1969) 71 Cal.2d 66, the court held that this presumption of retroactivity applies where a new law merely allows for a possibility of reduced punishment by giving the trial court discretion to impose a lesser sentence. (*Id.* at p. 76.) In subsequent years, the court has reaffirmed this doctrine numerous times and applied it to a wide range of ameliorative criminal laws. (See *Esquivel*, *supra*, 11 Cal.5th at pp. 675–676 [listing cases].)

In *People v. Burton* (2020) 58 Cal.App.5th Supp. 1 (*Burton*), the court applied this doctrine to Assembly Bill No. 1950 and held that the law applies retroactively because it is an ameliorative statute that reduces a criminal defendant's potential punishment. Although " '[p]robation is neither "punishment" [citation] nor a criminal "judgment" [citation]' " (*Burton*, *supra*, 58 Cal.App.5th Supp. at p. 16), the court recognized that

probation is a restriction on liberty and increases the likelihood that the probationer will be found in violation of probation and incarcerated.  In addition, the court recognized that the Legislature, in enacting Assembly Bill No. 1950, intended to prevent probationers from further involvement in the criminal justice system because of probation violations that do not involve new criminal conduct.  (*Burton, supra*, 58 Cal.App.5th Supp. at p. 15.)  With no evidence of legislative intent to the contrary, the court concluded that the ameliorative changes of Assembly Bill No. 1950 should " 'extend as broadly as possible' " (*Burton, supra*, at p. 16, quoting *People v. Conley* (2016) 63 Cal.4th 646, 657 (*Conley*)), including to defendants already on probation.  Several subsequent cases that have considered the issue reached the same conclusion (see, e.g., *Quinn, supra*, 59 Cal.App.5th at pp. 879−884; *Sims, supra*, 59 Cal.App.5th at pp. 955−964; *Lord, supra*, 64 Cal.App.5th at pp. 244−246; *Stewart, supra*, 62 Cal.App.5th at pp. 1070−1074, review granted), and we see no reason to disagree.

### B. *Retroactive Application to Defendants with Existing Violations*

The Attorney General does not take issue with the analysis above, but contends that Assembly Bill No. 1950 does not apply retroactively to Canedos because the court had already found that he violated probation before the law became effective.  This was not the situation in the cases cited above, where the defendant challenged the probation order as part of a direct appeal of a conviction.  (See *Quinn, supra*, 59 Cal.App.5th at p. 878; *Stewart, supra*, 62 Cal.App.5th at pp. 1069–1070, review granted; *Sims, supra*, 59 Cal.App.5th at pp. 946–947; *Lord, supra*, 64 Cal.App.5th at p. 243.)  In two recent cases, *People v.*

6

*Faial* (2022) 75 Cal.App.5th 738 (*Faial*) and *Kuhnel v. Superior Court* (2022) 75 Cal.App.5th 726 (*Kuhnel*), the First District, Division Three agreed with the Attorney General and held that Assembly Bill No. 1950 applies retroactively only to "defendants whose probation has not been revoked and terminated" (*Faial, supra*, 75 Cal.App.5th at p. 746).

We disagree. The Supreme Court's recent decision in *Esquivel* compels the conclusion that, although the trial court terminated Canedos's probation, that decision was not yet final for purposes of *Estrada* retroactivity. Esquivel was similarly situated to Canedos: He was sentenced to five years in prison, with the sentence suspended pending the completion of probation. (*Esquivel, supra*, 11 Cal.5th at p. 673.) He did not initially challenge the sentence, but filed an appeal after the court three years later found him in violation of the terms of his probation and ordered the suspended sentence into effect. (*Ibid.*) In the interim, the Legislature had enacted a statute restricting the applicability of certain sentence enhancements that constituted two years of Esquivel's sentence. The court held that the law applied retroactively to Esquivel. (*Id.* at p. 678.) The court explained that "[t]his case was not final, for purposes of the *Estrada* presumption, because the 'criminal prosecution or proceeding' brought against defendant was not complete when the ameliorative legislation at issue took effect. [Citation.] Defendant had not exhausted direct review of the order causing his carceral punishment to take effect. The time for him to seek that review had not expired. And he had not successfully completed probation." (*Ibid.*) The revocation of probation did not prevent Esquivel from challenging the validity of his sentence on appeal because the revocation was not yet final.

The same is true in this case. The trial court terminated Canedos's probation in 2020, but that decision was still on appeal, and therefore not yet final for purposes of *Estrada*, when Assembly Bill No. 1950 became effective.

The Attorney General contends that the Legislature did not intend for Assembly Bill No. 1950 to apply retroactively to defendants like Canedos, noting that the law contains no mechanism for shortening existing probation terms, and does not address retroactive application to defendants who violated the terms of their probation before the law became effective. But this argument misunderstands the *Estrada* presumption. Silence on the question of retroactivity means that an ameliorative law is fully retroactive as a matter of "presumed legislative intent." (*Esquivel*, *supra*, 11 Cal.5th at p. 680.) If the Legislature means to limit the scope of retroactive application, it must so specify: "Our cases do not 'dictate to legislative drafters the forms in which laws must be written' to express an intent to modify or limit the retroactive effect of an ameliorative change; rather, they require 'that the Legislature demonstrate its intention with sufficient clarity that a reviewing court can discern and effectuate it.' " (*Conley*, *supra*, 63 Cal.4th at pp. 656–657.)

Thus, in *Conley*, the court held that Proposition 36, which limited the application of the "Three Strikes" law, was not fully retroactive because the electorate created a specific mechanism for convicted defendants to seek resentencing. (*Conley*, *supra*, 63 Cal.4th at pp. 657–659.) The court explained that "[w]here, as here, the enacting body creates a special mechanism for application of the new lesser punishment to persons who have previously been sentenced, and where the body expressly makes retroactive application of the lesser punishment contingent on

8

a court's evaluation of the defendant's dangerousness, we can no longer say with confidence, as we did in *Estrada,* that the enacting body lacked any discernible reason to limit application of the law with respect to cases pending on direct review." (*Id.* at pp. 658–659.) Assembly Bill No. 1950 contains no equivalent provision, and there is no basis for us to infer a limitation on the retroactive effect of the law.

Two additional recent cases support our position that Assembly Bill No. 1950 applies retroactively to Canedos. In *People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, the Supreme Court held that Proposition 57, which barred prosecutors from initiating charges against juvenile defendants in adult court, applied fully retroactively to a case not yet final. The defendant in the case had been validly charged in adult court before the law was enacted, and the trial court, finding Proposition 57 retroactive, transferred the case to the juvenile court for a fitness hearing. The People sought writ relief, but the Supreme Court ultimately agreed with the trial court that the defendant was entitled to the benefit of Proposition 57 despite the prior filing of charges in adult court. (*Lara, supra,* at pp. 307–314.) In *People v. Frahs* (2020) 9 Cal.5th 618, the Supreme Court likewise held that a new law creating a diversion program for defendants with mental health disorders applied retroactively to the defendant's case, which was pending appeal of defendant's conviction when the new program was enacted. Although the defendant was convicted of robbery before the law became effective, the court remanded the case to the trial court to hold a mental health eligibility hearing, with the possibility of ultimately dismissing the charges against him. (*Id.* at pp. 640−641.) Thus, in both cases, the commencement of

proceedings under existing law did not deny the defendant the benefit of the retroactive application of a new law rendering the prior proceedings potentially invalid.

The court in *Faial* distinguished these cases from Assembly Bill No. 1950 on the ground that "the laws in *Lara* and *Frahs* did not contemplate obliteration of the offenders' accountability for conduct predating the new laws; rather, the offenders remained answerable for such conduct through the juvenile justice system or through the mental health diversion program." (*Faial*, *supra*, 75 Cal.App.5th at p. 746.) We do not believe this distinction is dispositive. First, *Estrada* retroactivity applies not only in cases like *Frahs* and *Lara*, where a new law creates a mechanism for possible reduced punishment, but also where a new law eliminates all culpability for a defendant's conduct. For example, in *People v. Rossi* (1976) 18 Cal.3d 295, the Legislature decriminalized oral copulation between consenting adults after the defendant was convicted of the offense. The Supreme Court held that *Estrada* required reversing the conviction (*id.* at pp. 302–304) despite the fact that, as the dissent noted, this would allow the "defendant to entirely escape punishment for her offense" (*id.* at p. 305 (dis. opn. of Clark, J.)). Courts have reached similar conclusions where a change in the law decriminalized a defendant's conduct in selling devices to allow piracy of pay television service (*People v. Babylon* (1985) 39 Cal.3d 719, 721) and in possessing medical marijuana (*People v. Trippet* (1997) 56 Cal.App.4th 1532, 1544–1545). The court in *Faial* cited no authority to support its conclusion that a different rule should apply here.

Second, Assembly Bill No. 1950 does not "obliterate" a defendant's liability for criminal conduct. It simply shortens

10

the maximum time during which a defendant may be required to obey terms of probation or punished for violating those terms. Indeed, as the court in *Faial* acknowledged, this was the purpose of the law as indicated in the legislative history.  The drafters of the law "acted on studies showing that probation services are 'most effective during the first 18 months of supervision' and that 'providing increased supervision and services earlier reduces an individual's likelihood to recidivate.' " (*Faial*, *supra*, 75 Cal.App.5th at p. 744.)  Reducing "probation periods would not only ' "decrease the amount of time that an individual must suffer for a prior misdeed," ' but also ' "has the added benefit of incentivizing compliance." ' " (*Ibid.*)

Unlike the *Faial* court, we conclude that it is consistent with these stated purposes of the law to apply it retroactively to defendants like Canedos who violated the terms of their probation before the law became effective.  The Legislature believed it would be counterproductive to incarcerate defendants for minor violations of the terms of their probation committed more than two years after the original offense. Consistent with that purpose, if the violation is serious, as in this case, the defendant may be prosecuted for a new crime.  Indeed, a jury convicted Canedos of assault with a deadly weapon, and the court sentenced him to four years in prison.

We recognize that retroactively applying Assembly Bill No. 1950 to defendants with existing violations does not " ' "incentiviz[e] compliance" ' " with probation rules (*Faial*, *supra*, 75 Cal.App.5th at p. 744), but this is not enough to overcome the *Estrada* presumption where neither the statute nor the legislative history explicitly addresses restricting retroactivity.  (See *Conley*, *supra*, 63 Cal.4th at pp. 656–657.)

In *Kuhnel*, the same division of the Court of Appeal that issued *Faial* offered a separate justification for holding that Assembly Bill No. 1950 does not apply retroactively to existing probation violations. The court relied on two statutes governing the revocation of probation. The first, section 1203.3, subdivision (a), provides that "[t]he court has the authority at any time *during the term of probation* to revoke, modify, or change its order of suspension of imposition or execution of sentence." (Italics added.) This means that " '[a]n order revoking probation must be made within the period of time circumscribed in the order of probation. Otherwise, the probationary period terminates automatically on the last day.' " (*Hilton v. Superior Court* (2014) 239 Cal.App.4th 766, 773, italics omitted.) Next, section 1203.2, subdivision (a) provides that the trial court's action to revoke probation, "summary or otherwise, shall serve to toll the running of the period of supervision." As the Supreme Court explained in *People v. Leiva* (2013) 56 Cal.4th 498 (*Leiva*), the purpose of this statute is to allow trial courts time to deal with violations occurring near the end of a probation term. By tolling the probation term for a reasonable period, the statute "preserve[s] the trial court's authority to hold a formal probation violation hearing at a time after probation would have expired with regard to a violation that was alleged to have occurred *during* the probationary period." (*Id.* at pp. 514−515.)

We agree with the *Kuhnel* court's application of these statutes to the specific facts of that case. *Kuhnel* involved a defendant sentenced to three years of probation for misdemeanor embezzlement. (*Kuhnel*, *supra*, 75 Cal.App.5th at p. 729.) Under Assembly Bill No. 1950, the maximum probation term for most misdemeanor offenses is one year. (§ 1203a.) The defendant

12

violated her probation within 11 months of her conviction. Thus, even under the new law, she could be held liable for violating probation. The prosecution, which had no reason to believe it was facing a ticking clock, waited two additional months before seeking to revoke her probation. The court reasoned that *Estrada* "does not require us to play 'gotcha' with the prosecution, imposing an after-the-fact, artificial deadline for summary revocation. The rationale of *Estrada* provides no basis for departing from the general rule of prospective application when analyzing the date by which a court must have summarily revoked probation in order to preserve its authority to adjudicate a violation committed during a probationer's first year." (*Kuhnel*, *supra*, 75 Cal.App.5th at p. 736.)

We do not find this reasoning persuasive, however, in cases like Canedos's, where the defendant's misconduct occurred outside of the maximum probation term under Assembly Bill No. 1950. In these cases, the violation did not "occur[ ] *during* the probationary period*" (*Leiva*, *supra*, 56 Cal.4th at p. 515) as amended by the new statute. Thus, there is no justification for tolling the probation term under section 1203.2, subdivision (a).

## C. *Application to Canedos*

Because Assembly Bill No. 1950 applies retroactively to Canedos's case, the maximum duration of his probation was two years, expiring in January 2018. Thus, by the time Canedos committed assault with a deadly weapon in 2019, the court no longer had jurisdiction to revoke his probation. (See *Butler*, *supra*, 75 Cal.App.5th at pp. 220–221, petn. for review pending.)

13

We must therefore reverse the trial court's order revoking probation.[2]

In many cases, that would not be the end of the story: We would need to remand the case to the trial court for a full resentencing hearing. Under the full sentencing rule, when we overturn a portion of a defendant's sentence and remand the case, "the resentencing court has jurisdiction to modify *every* aspect of the sentence, and not just the portion" that was the basis of the resentencing hearing. (*People v. Buycks* (2018) 5 Cal.5th 857, 893.) "This rule is justified because an aggregate prison term is not a series of separate independent terms, but one term made up of interdependent components. The invalidity of one component infects the entire scheme." (*People v. Hill* (1986) 185 Cal.App.3d 831, 834.)

The trial court is bound by a significant restriction on its resentencing authority after a successful appeal, however: The new sentence must be no more severe than the original one.[3] (*People v. Hanson* (2000) 23 Cal.4th 355, 358–360.) This

---

[2] As we noted above (see Discussion part B., *ante*), our reversal of Canedos's sentence on the probation violation of course does not affect his conviction or sentence for assault with a deadly weapon, which we affirmed in our prior opinion in this case. (*People v. Canedos*, *supra*, B307948.)

[3] We requested supplemental briefing on the question of whether we should consider Canedos's plea based on an indicated sentence analogous to a plea bargain. We now view this issue as immaterial because even if we were to treat Canedos's guilty plea as analogous to a plea bargain for purposes of resentencing, the same restriction on the length of his sentence would apply. (See *Butler*, *supra*, 75 Cal.App.5th at p. 225, petn. for review pending.)

requirement is consistent with the function of *Estrada* to allow defendants to benefit from retroactive ameliorative changes in the law, as well as with the intent of the Legislature in enacting Assembly Bill No. 1950 to reduce the risk to probationers of reincarceration.  (See *Stewart*, *supra*, 62 Cal.App.5th at pp. 1073–1074, review granted.)

In this case, because any other sentence the court might impose for his 2016 convictions would be more severe than the original order suspending his sentence and placing him on four years of probation, there is no reason to remand for resentencing.  Thus, we see no alternative but to order the trial court to reduce Canedos's sentence to two years of probation, vacate its finding that Canedos violated probation, and to strike the portion of the prison sentence attributable to that finding. (See *Butler*, *supra*, 75 Cal.App.5th at pp. 225–226, petn. for review pending.)

**DISPOSITION**

The court's finding that Canedos violated probation is vacated and the 2 years 8 months portion of the sentence attributable to the probation violation is stricken. The court is directed to enter an order modifying Canedos's term of probation to two years in accordance with Penal Code section 1203.1, subdivision (a) as amended by Assembly Bill No. 1950, reinstating probation, and terminating probation nunc pro tunc to January 12, 2018. The court shall resentence Canedos to four years in prison for the 2020 conviction of assault with a deadly weapon. The trial court is also directed to prepare an amended abstract of judgment and to forward a certified copy to the Department of Corrections and Rehabilitation.

CERTIFIED FOR PUBLICATION.

ROTHSCHILD, P. J.

We concur:

BENDIX, J.

CRANDALL, J.*

---

 * Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.