Filed 8/5/25  P. v. Sarnie CA4/1

### NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>      v.<br><br>ROBERT WALTER SARNIE,<br><br>      Defendant and Appellant. | D084646<br><br><br>(Super. Ct. No. SCD297630) |

APPEAL from a judgment of the Superior Court of San Diego County, Laura H. Parsky, Judge.  Affirmed.

Richard J. Moller, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Tami Falkenstein Hennick and Melissa Mandel, Deputy Attorneys General, for Plaintiff and Respondent.

Robert Walter Sarnie appeals from a judgment after a jury conviction for escape while in custody for a felony.  (Pen. Code, § 4532, subd. (b)(1).)  The conviction was based on Sarnie's escape from a CoreCivic work furlough

facility without authorization while serving a sentence in a work furlough program. Sarnie contends the trial court violated his Sixth and Fourteenth Amendment rights by refusing to give a jury instruction on an affirmative defense of necessity to protect his son from harm. We disagree and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

*A. Pretrial Proceedings on Necessity Defense*

Before trial, the prosecution made a motion to exclude three defense witnesses identified by the defense as having "personal knowledge about [Sarnie]'s struggles with his child's mother, her stealing his truck, damaging his business, and endangering his son."

On the first day of trial, defense counsel asserted that these witnesses were necessary to support a defense of necessity to prevent harm to a third party—Sarnie's 13-year-old son. Defense counsel noted that "the general necessity defense [CALCRIM No. 3403[1]] allows for the preventing [of] death or harm to a third party as well as the defendant, and [the] escape necessity [defense] [CALCRIM No. 2764[2]] leaves out the third party." He argued that

---

1     CALCRIM No. 3403, the general necessity instruction, requires that "(1) [Defendant] acted in an emergency to prevent significant bodily harm or evil to himself/herself *or someone else*; [¶] (2) [Defendant] had no adequate legal alternative; [¶] (3) The defendant's acts did not create a greater danger than the one avoided; [¶] (4) When the defendant acted, he/she believed that the act was necessary to prevent the threatened harm or evil; [¶] (5) A reasonable person would also have believed that the act was necessary under the circumstances; and [¶] (6) The defendant did not substantially contribute to the emergency." (Italics added.)

2     CALCRIM NO. 2764, the escape necessity instruction, requires that: "(1) The defendant was faced with a specific threat of death, or forcible sexual attack or substantial bodily injury in the immediate future; [¶] (2) There was no time for the defendant to make a complaint to the authorities or there was a history of complaints that were not acted on, so that a reasonable person

"the distinction there seems arbitrary to leave out the third party in the escape instruction." Defense counsel therefore proposed giving a merged version of the two CALCRIM instructions to allow Sarnie to present a defense of necessity to protect his son for the escape charge.

Based on *People v. Lovercamp* (1974) 43 Cal.App.3d 823 (*Lovercamp*) and *People v. Condley* (1977) 69 Cal.App.3d 999 (*Condley*), the People took the position that necessity is only a very narrow defense to an escape charge "that allows someone who is facing dangers *to themselves* within this place of incarceration to then leave and to find help." (Italics added.)

At the court's request, Sarnie and his counsel made an informal offer of proof regarding what evidence they wished to present on Sarnie's defense of necessity to protect his son. Many of these facts were apparently unknown to defense counsel and supplied to the court directly by Sarnie.

According to Sarnie's proffer, a day or two before the escape, several witnesses informed him that "his son was essentially unattended, unsupervised in [Sarnie's new] home surrounded by drug addicts and criminals," where there was a gun fight, a stabbing, and known drug use. Sarnie stated that the stabbing occurred before he entered the work furlough program, and the gun fight occurred after he escaped.

Sarnie explained that he left CoreCivic after he overheard his son crying in the background of a call with his ex-girlfriend. Sarnie "wasn't sure" why his son was crying, but believed it had to be "something very significant."

_____

would conclude that any additional complaints would be ineffective; [¶] (3) There was no time or opportunity to seek help from the courts; [¶] (4) The defendant did not use force or violence against prison personnel or other people in the escape other than the person who was the source of the threatened harm to the defendant; and [¶] (5) The defendant immediately reported to the proper authorities when he/she had attained a position of safety from the immediate threat."

Sarnie said that before leaving the facility, he called 911, Child Welfare Services, and the local non-emergency police line.

After leaving CoreCivic, Sarnie immediately went to his home where he thought his son was. Sarnie saw his son within five feet of a person smoking a methamphetamine pipe, prompting Sarnie to grab a fire extinguisher and put out the pipe. At this point, Sarnie thought he needed additional help keeping drug users away from his son and decided to go to a police station.

The prosecutor responded to Sarnie's proffer with a different version of the facts. She represented that Sarnie left work furlough and went to his mother's home, where his ex-girlfriend and son were at the time. He got into an argument with his ex-girlfriend, brandished a shovel at her, then left and returned later. His ex-girlfriend noticed him in the backyard carrying a fire extinguisher. She called law enforcement. When officers arrived, they spoke with Sarnie's son who was in good health. At no time did Sarnie tell officers that his son was in any sort of distress or danger.

After the proffer from both sides, the court requested briefing on "whether the escape necessity defense can apply to a specific threat of harm to a third party" and "[whether] that harm appears to be limited to death, forcible sexual attack, or substantial bodily injury."

In its briefing on this issue filed the next day, the defense stated the relevant facts in support of Sarnie's necessity defense as follows: "Mr. Robert Sarnie was participating in Core Civic Work Furlough at 551 South 35th Street, San Diego, CA 92113. On November 11, 2022, Mr. Sarnie received a call informing him that a group of people were at his home smoking meth in front of his child. Mr. Sarnie then called the mother of his child, who has a history of drug abuse, to get some clarification on the emergency. During the call, Mr. Sarnie heard his child crying in the background, indicating [to him]

4

that his child was in danger and needed immediate assistance as the mother of his child was seemingly complacent of the drug use happening in front of his child. In light of this immediate and extraordinary danger, Mr. Sarnie left his job to assure that his child was safe." The defense brief did not mention anything about a gun fight or stabbing.

The defense asserted that these facts established all the elements of a general necessity defense as set forth in CALCRIM No. 3403. The defense suggested that the more narrow necessity instruction specific to escape charges (CALCRIM No. 2764), which does not contain any language regarding protection of third parties, did not supplant "the more general public policy of the necessity defense under CALCRIM No. 3403."

In their brief, the People argued that "because CALCRIM 2764 is specific to the necessity defense as it relates to escape from custody, the Court should *not* provide the general necessity defense as provided in CALCRIM 3403" and "should *not* edit CALCRIM 2764 to include language of the protection of others."

The trial court ruled that "the only applicable necessity defense would be [CALCRIM No.] 2764." The court declined to give "a new hybrid instruction" applying the escape necessity defense to protect third parties, because it found the escape necessity defense was "narrowly tailored to the circumstances of being in confinement and weighing the public's interest against the prisoner's interests." Additionally, the court found there was insufficient evidence for a reasonable jury to conclude that all the elements of the CALCRIM No. 2764 escape necessity defense applied. Specifically, it concluded that Sarnie's offer of proof did not establish element two (that there was no time to make a complaint to authorities or a prior history of complaints not acted on), element three (that there was no time or

5

opportunity to seek help from the courts), or element five (that the defendant immediately reported to proper authorities when he had attained a position of safety from the immediate threat). Thus, the court granted the People's motion in limine to exclude evidence related to this theory of the defense. The case then proceeded to trial.

### B. Prosecution Trial Evidence

In September 2022, Sarnie was sentenced to serve one year in a work furlough program as an alternative to jail. In October, Sarnie reported to CoreCivic, a community-based program that allows an inmate to work a regular job while serving time. At the program orientation, Sarnie met with a staff member who explained CoreCivic's policies and procedures. Those procedures include that an inmate can only leave the facility for work or specific appointments with staff approval and that an inmate can report safety concerns or emergencies to any staff member. Sarnie signed paperwork acknowledging these policies and procedures.

On November 11, Sarnie volunteered to clean the exterior of the CoreCivic facility. At 2:15 p.m., Sarnie laid down the broom he was using and calmly walked off camera, leaving the facility grounds. Five minutes after that, CoreCivic staff noticed he was missing. A staff member immediately attempted to call Sarnie but was unable to reach him.

Nearly two hours after Sarnie escaped, Sarnie's ex-girlfriend reported that he had committed domestic violence against her. Police arrived at Sarnie's house and discovered Sarnie hiding under a car about a block away. Sarnie told the officers he was waiting for a friend to give him a ride back to the CoreCivic facility. He did not mention any fear for his own safety. Police arrested Sarnie and took him to the police station.

6

## C.    Defense Trial Evidence

At trial, Sarnie testified and presented a new defense theory based solely on the escape necessity defense as it related to his own personal safety. Sarnie testified that there were several incidents when he discovered men smoking fentanyl at the CoreCivic facility. The men blew smoke in his face and one threatened to kill him if he reported the incident. The death threat terrified Sarnie. It occurred at about 11:00 a.m. on the day of his escape. After this threat, Sarnie put in a request to go to the police station. His request was denied, so he decided to leave the work furlough facility. Sarnie contacted a couple of people for advice before leaving, including his mother. He left the facility several hours after the threat.

## D.    Verdict and Judgment

Based on Sarnie's trial testimony, the court instructed the jury with an unmodified version of CALCRIM No. 2764 on the escape necessity defense. The jury found Sarnie guilty of escape while confined in custody for a felony. (Pen. Code, § 4532, subd. (b)(1).) After conducting a bench trial, the court also found a prior strike conviction true (*Id*., §§ 677 subds. (b)–(i), 1170.12, and 668). The court sentenced Sarnie to a middle term of 16 months to be served consecutively with sentences he received in three other cases.

## DISCUSSION

Sarnie contends that the trial court erred in refusing to give a modified jury instruction extending the escape necessity defense to the protection of third parties and excluding evidence in support of that defense. The People assert that the court properly refused to give the modified instruction because the escape necessity defense does not extend to the protection of third parties. The People also maintain Sarnie failed to offer sufficient proof for each element of the defense. We need not decide whether the necessity

7

escape defense can ever apply to the protection of third parties, because we agree with the trial court that Sarnie failed to proffer substantial evidence to support each element of such a defense.

### A. Governing Law

#### 1. Standard of Review

" ' "It is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to issues raised by the evidence. [Citations.] The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case." ' " (*People v. Breverman* (1998) 19 Cal.4th 142, 154.) "The trial court's duty to instruct on general principles of law and defenses . . . arises only when there is substantial evidence to support giving such an instruction." (*People v. Crew* (2003) 31 Cal.4th 822, 835.) " '[A] trial court need give a requested instruction concerning a defense *only if there is substantial evidence to support the defense.*' " (*In re Christian S.* (1994) 7 Cal.4th 768, 783.) More specifically, a court may refuse to allow a necessity defense if the defendant's offer of proof "is insufficient as a matter of law to establish the elements of a necessity defense even if accepted as true by the trier of fact." (*People v. Slack* (1989) 210 Cal.App.3d 937, 944 (*Slack*).) A claim of instructional error is reviewed de novo. (*People v. Mitchell* (2019) 7 Cal.5th 561, 579.)

#### 2. Substantive Law

In *Lovercamp, supra*, 43 Cal.App.3d 823, the "court held that in extremely limited circumstances a defense of necessity is available to prisoners charged with escape." (*Condley, supra*, 69 Cal.App.3d at p. 1008.) The defendant in *Lovercamp* sought to present a defense of necessity based

on her offer of proof that she was forced to escape because she was faced with threats of forcible sexual assault by other inmates and officials had done nothing for her protection. (*Lovercamp, supra*, 43 Cal.App.3d at pp. 825, 832.) Although the court ruled that necessity could be asserted as a defense to an escape charge, it also acknowledged that such a defense "carried with it the seeds of mischief" because of the many prison conditions that could conceivably be invoked to justify an escape. (*Id*. at pp. 826–827.) In applying the necessity defense to an escape charge, therefore, courts must "use extreme caution lest the overriding interest of the public be overlooked." (*Id*. at p. 827.) "The question that must be resolved involves looking at all the choices available to the defendant and then determining whether the act of escape was the only viable and reasonable choice available. By doing so, both the public's interest and the individual's interest may adequately be protected." (*Ibid*.)

The court in *Lovercamp* "place[d] rigid limitations on the viability of the defense [for an escape charge] in order to insure that the rights and interests of society will not be impinged upon." (*Lovercamp, supra*, 43 Cal.App.3d at p. 827.) Specifically, the defense is available only if the following conditions are satisfied: "(1) The prisoner is faced with a specific threat of death, forcible sexual attack or substantial bodily injury in the immediate future; [¶] (2) There is no time for a complaint to the authorities or there exists a history of futile complaints which make any result from such complaints illusory; [¶] (3) There is no time or opportunity to resort to the courts; [¶] (4) There is no evidence of force or violence used toward prison personnel or other 'innocent' persons in the escape; and [¶] (5) The prisoner immediately reports to the proper authorities when he has attained a

9

position of safety from the immediate threat." (*Id*. at pp. 831–832, fn. omitted.)

These strict requirements for the necessity defense to an escape charge are now set forth in CALCRIM No. 2764. The general necessity defense for other crimes is covered by CALCRIM No. 3403.

*B. Analysis*

Neither *Lovercamp* nor any other California case has decided whether the defense of necessity to an escape charge could ever apply to the protection of a third party. Without deciding the question ourselves, we will assume that it could. But even indulging this assumption, we see no logical reason why the strict requirements of *Lovercamp* would not otherwise apply. Even if the defendant were acting in protection of another, the relevant question would still involve "looking to all the choices available to the defendant and then determining whether the act of escape was the only viable and reasonable choice available." (*Lovercamp, supra*, 43 Cal.App.3d at p. 827.) And the same "rigid limitations on the viability of the defense" would be necessary "to insure that the rights and interests of society will not be impinged upon." (*Ibid*.) We therefore conclude that any escape necessity defense for the protection of a third party would be subject to the *Lovercamp* requirements.

As the trial court ruled, Sarnie's offer of proof was legally insufficient to satisfy these requirements, even if accepted as true. First, there was no showing that Sarnie's son was "faced with a *specific threat* of death, forcible sexual assault or substantial bodily injury in the *immediate* future." (*Lovercamp, supra*, 43 Cal.App.3d at p. 832, italics added.) Sarnie's proffer established only a generalized concern for his son's welfare because he was living without adequate supervision in an environment where drugs were

10

being consumed and there had been a stabbing. This does not rise to the level of a specific and immediate threat of death, sexual assault, or substantial bodily injury to Sarnie's son.

Second, Sarnie failed to establish that there was "no time for a complaint to authorities" or "a history of futile complaints." (*Lovercamp, supra*, 43 Cal.App.3d at p. 831.) According to Sarnie, in fact, he *did* call 911, child welfare services, and the nonemergency police line a couple of hours before his escape. He claimed he "was on the phone most of the afternoon trying to deal with it." He also testified that he contacted a couple of people for advice before leaving the facility, including his mother. Thus, there was adequate time for a complaint to authorities and Sarnie made no showing that the complaints were futile or there was a prior history of futile complaints.

Third, Sarnie failed to demonstrate there was "no time or opportunity to resort to the courts." (*Lovercamp, supra*, 43 Cal.App.3d at p. 831.) According to Sarnie, he received the reports about his son's living conditions a day or two before his escape. Although Sarnie was in custody in a work furlough program, he made no offer of proof as to why he could not seek immediate assistance from the courts to protect his son.

For these reasons, we conclude the trial court correctly ruled Sarnie's offer of proof was insufficient to support a defense of necessity to protect a third party.[3] As a result, the trial court did not commit any error in refusing

_____

[3] The trial court also concluded that Sarnie failed to establish the fifth *Lovercamp* element, i.e., that he immediately reported to the proper authorities after dealing with the threat to his son. Although the prosecution presented evidence that Sarnie was apprehended by the police hiding under a car after his ex-girlfriend made a report of domestic violence, Sarnie asserted in his offer of proof that he went to the police station for help and tried to return to work furlough. Because we must assume the truth of Sarnie's offer

11

to instruct on it. (*Slack, supra*, 210 Cal.App.3d at pp. 942–944.) Moreover, the court did not commit any error in excluding evidence of this theory of necessity. A court may exclude evidence offered in support of a necessity defense as irrelevant (Evid. Code, §§ 210, 350) and unduly prejudicial (Evid. Code, § 352) if it concludes after a preliminary hearing, offer of proof, or similar procedure that the proffered evidence is legally insufficient to establish the elements of the defense even if accepted as true. (*People v. Galambos* (2002) 104 Cal.App.4th 1147, 1157–1158.) Such a ruling "is justified so that otherwise irrelevant and confusing matter is not placed before the jury." (*Id.* at p. 1157.) "Often novel, necessity defenses in particular risk the presentation of otherwise irrelevant and confusing evidence to the jury if the defense cannot be established." (*Id.* at pp. 1157–1158.)

Alternatively, even assuming any error in excluding this evidence, it would be harmless. As we have explained, this evidence would not have been legally sufficient to give the requested jury instruction for a necessity defense in protection of a third party and thus could not have resulted in a more favorable jury verdict. Any evidentiary error would therefore be harmless under either the *Watson* standard of prejudice for state-law errors or the *Chapman* standard for federal constitutional errors. (*People v. Watson* (1956) 46 Cal.2d 818, 836–837; *Chapman v. California* (1967) 386 U.S. 18, 24.)

---

of proof regardless of its credibility, we do not rely on the absence of this element as a basis for our decision.

## DISPOSITION

The judgment is affirmed.

BUCHANAN, J.

WE CONCUR:

DATO, Acting P. J.

DO, J.